709 So.2d 1023 (1998)
Odilon Chacha COTO, et al.
v.
J. RAY McDERMOTT, S.A., et al.
Mario Arturo MARTINEZ, et al.
v.
J. RAY McDERMOTT, S.A., et al.
Nos. 96-CA-2701, 96-CA-2702.
Court of Appeal of Louisiana, Fourth Circuit.
March 18, 1998.
Rehearing Denied April 30, 1998.
*1025 Russ M. Herman, Herman, Herman, Katz & Cotler, New Orleans, and Randy J. Ungar, Randy J. Ungar & Associates, New Orleans, for Plaintiffs/Appellants.
Edward J. Koehl, Jr., Scott A. Decker, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for Defendants/Appellees J. Ray McDermott, S.A., et al.
James Sentner, Orin H. Lewis, Gardere Wynne Sewell & Riggs, L.L.P., Houston, TX, and George J. Fowler, III, Paul N. Vance, Edward F. LeBreton, III, Rice & Fowler, New Orleans, for Defendants/Appellees Gulf Technical Services Corporation, CCC Fabricaciones Y Construcciones, S.A. de C.V., Corporacion de Industrias Y Construcciones, S.A. de C.V.
Before BARRY, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
Appellants are citizens of Mexico. They are surviving crew-members and representatives of deceased crew-members of the Derrick Lay Barge 269, which sank off the Yucatan Peninsula in the Bay of Campeche on October 15, 1993, during Hurricane Roxanne. Approximately 250 people were aboard as crew, including United States citizens and Louisiana residents. At the time the vessel sank, it was under tow by the M/V Captain John and the M/V North Carolina.
The appellants filed suit against a number of defendants, including two Panamanian companies with headquarters in New Orleans,[1] two Mexican corporations,[2] a Louisiana corporation, a Florida partnership, and a Texas corporation. The appellants sought damages under the Jones Act and general maritime law or, alternatively, under Louisiana law or other appropriate laws, namely the law of Mexico. The defendants filed exceptions of no cause of action and no right of action, and a motion to dismiss on the grounds of forum non conveniens, directed to the appellants.
By a judgment signed April 25, 1996, the district court denied the exception of no cause of action, but it maintained the exception of no right of action and dismissed the appellants' Jones Act and general maritime claims pursuant to 46 U.S.C.App. § 688(b).[3] The court reasoned that (1) the appellants were Mexican citizens and not permanent resident aliens of the United States, (2) they were employed in an enterprise engaged in *1026 the exploration, development, or production of offshore mineral or energy resources, (3) the enterprise was located on the outer continental shelf of a nation other than the United States, and (4) they had a remedy under Mexican law in Mexico. The appellants do not appeal that ruling.
The district court, however, delayed its ruling on the appellants' causes of action asserted under Louisiana law and Mexican law. On September 4, 1996, the district court maintained the exception of no right of action, dismissing the Louisiana law claims with prejudice and dismissing the Mexican law claims without prejudice to refiling them in Mexico. The appellants appeal this ruling.
The district court found that the Louisiana and Mexican law claims could proceed in this case only under the "saving to suitors" clause of 28 U.S.C. § 1333(1).[4] The district court reasoned, however, that the Louisiana and Mexican law claims did not satisfy the "saving to suitors" exception because such claims would directly contradict that body of law as defined by Congress in 46 U.S.C.App. § 688(b). See n. 3, supra. The district court observed that the appellants could proceed with this action in Mexico.
The appellants assert the district court erroneously determined the scope and interpretation of 46 U.S.C.App. § 688(b). They maintain that the section does not reference and has no application (either expressly or implicitly) to claims asserted under state or foreign law. They further argue that the section is simply a statutory choice-of-law provision which limits the application of "American" law in certain cases involving foreign offshore oil exploration. The appellants contend Section 688(b) was not intended to preclude foreign seamen from asserting foreign and state law claims in the courts of the United States. They note that, even though the federal courts do not have subject matter jurisdiction to hear legal actions where at least one of the plaintiffs and one of the defendants are aliens, state courts do have such subject matter jurisdiction, subject to the authority to dismiss the action under the doctrine of forum non conveniens. The appellants emphatically point out that the common law doctrine of forum non conveniens has limited application in the courts of Louisiana.[5]
When it amended the Jones Act in 1982, Congress expressly eliminated a Jones Act remedy, as well as any other remedy under the general maritime law of the United States, to a foreign seaman employed in the offshore mineral extraction industry who is injured on waters overlying the outer continental shelf of a nation other than the United States, unless neither the country which had *1027 sovereignty over the outer continental shelf where the injury occurred nor the seaman's home country provides a remedy. 46 U.S.C.App. § 688(b). The purpose of the amendment was to protect United States companies active in the offshore oil and mineral extraction industry from the competitive disadvantage that may develop when foreign workers are allowed to forego the remedy available in their own or another country to pursue a claim in a court in the United States in the hope of availing themselves of either substantive or procedural advantages. See H.R.Rep. No. 97-863, at 2-4 (1982); c.f. Vaz Borralho v. Keydril Co., 710 F.2d 207 (5th Cir.1983). If we accept the appellants' proposition that a maritime tort claim barred by virtue of Section 688(b) may be entertained in any United States court under state or foreign law, the intent of Congress in amending the Jones Act in 1982 would be defeated. See 128 Cong. Rec. H7631-38 (daily ed. Sept. 28, 1982). We thus hold that the appellants have no Louisiana or Mexican law remedy in a Louisiana state court because the Jones Act and Congress's amendment thereof preempted any state or foreign law remedy that might have otherwise been available.
Commentators have opined that Section 688(b) effectively codified prior federal jurisprudence on choice of law, see, e.g., Schoenbaum, Admiralty and Maritime Law, 2d ed., § 6-13 (1994); though, it did so with respect only to "certain alien" plaintiffs. 46 U.S.C.App. § 688(b). Because of the historical interplay between choice of law and forum non conveniens, see, e.g., Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374, 1378-79 (5th Cir.1988), it has also been suggested, perhaps more correctly, that the provision was a codification of forum non conveniens as applied to certain foreign seamen. See Robertson & Speck, "Access to State Courts in Transnational Personal Injury Cases: Forum Non Conveniens and Antisuit Injunctions," 68 Tex. L.Rev. 937, 975, n. 56 (1990); see also Vaz Borralho, 710 F.2d at 209-10. Regardless of how one characterizes Section 688(b), in the end, Congress clearly circumscribed the right of redress for certain foreign seamen.
The language upon which the instant challenge centers is the reference to "any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person." The "maritime law of the United States" signifies the "general maritime law of the United States." See Camejo, 838 F.2d at 1376-77.[6] "General maritime law" is a term of art which denotes federal, judge-made maritime law. See Schoenbaum, § 5-1.[7] By adding Section 688(b), Congress specifically and expressly prohibited certain foreign seamen from asserting claims under either the general maritime law or the Jones Act.
The appellants allege that the defendants were liable under the Louisiana law concept of negligence or under some Mexican law concept of negligence. However, this case meets the locality and maritime nexus criteria required for admiralty jurisdiction. See Antill v. Public Grain Elevator, 577 So.2d 1039, 1040 (La.App. 4th Cir.), writ denied, 581 So.2d 684 (La.1991) (citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)).[8] Therefore, federal substantive maritime *1028 law applies. Id. at 1042. To allow the appellants to proceed in state district court, bypassing the restriction on available remedies set forth by Congress and in the general maritime law, would effectively grant a right to certain foreign seamen not enjoyed even by a seaman who is a citizen or permanent resident alien of the United States.
Although the issue is res nova in Louisiana, a Texas appellate court, considering the interplay between that state's Open Forum Law and Section 688(b), reached the same conclusion in two published cases. In Jackson v. S.P. Leasing Corp., 774 S.W.2d 673 (Tex.App.Texarkana 1989, writ denied) (on motion for second rehearing), a Honduran seaman was injured aboard a tugboat engaged in the exploration, development and production of minerals and energy resources off the coast of Mexico. Jackson asserted claims under the Jones Act and Texas law. The defendant established that Jackson had a remedy under Honduran and Mexican law. In its second rehearing, the court of appeals stated that it had considered Jackson's amended petition and response to the motion for summary judgment which raised a Texas law claim. The court affirmed summary judgment on all of Jackson's claims. The court reasoned that, in Section 688(b), Congress manifested its intent to preempt state law in the area of injured foreign seamen. The court noted a conflict between the Texas Open Forum Act and the Jones Act.[9] The former appeared to allow Jackson to litigate his claim in a Texas state court, whereas Section 688(b) denied a Jones Act remedy or any other remedy under the general maritime law to a foreign seaman in Jackson's circumstances. The court concluded that Jackson's remedies should be sought in Mexico and Honduras.
In Lawrenson v. Global Marine, Inc., 869 S.W.2d 519 (Tex.App.Texarkana 1993, writ denied), a British seaman assigned to the drill ship Glomar Adriatic I was injured on an offshore drilling platform located off the shore of Angola. Lawrenson asserted claims under the Jones Act and Texas law. The defendant established that Lawrenson had a remedy under British law. The court of appeals affirmed the grant of summary judgment. The court reasoned that when a seaman alleges negligence against an employer because of an injury during the course of his employment aboard ship, the state and common law causes of action are preempted by the federal maritime law, specifically the Jones Act. The court concluded that, under Section 688(b), Lawrenson could not bring his cause of action in a state or federal court of the United States because he had a remedy in England.[10]
*1029 The cases upon which the appellants rely, including those from this Court, do not support their position. In Smith v. ODECO, (U.K.), Inc., 615 So.2d 407 (La.App. 4th Cir. 1993), writ denied, 618 So.2d 412 (La.1993), a citizen of the United Kingdom was injured aboard a drilling rig engaged in the exploration and development of offshore energy resources in waters overlying the outer continental shelf off the coast of Spain. The Court, however, was not presented with the question whether Section 688(b) preempted the plaintiff's foreign law claim. The only issue was whether the plaintiff's claims were barred by prescription.
In Pape v. ODECO, Inc., 93-1005 (La.App. 4th Cir. 9/21/94), 643 So.2d 229, a British citizen was injured while working on an offshore drilling vessel in waters overlaying the continental shelf of the United Kingdom. Pape asserted claims under the Jones Act and general maritime law, as well as claims under Louisiana and Scottish and/or British law. This Court, however, was not called upon to decide whether Section 688(b) preempted Pape's Louisiana and foreign law claims.
In Balashov v. Baltic Shipping Co., 96-1129 (La.App. 4th Cir. 1/22/97), 687 So.2d 1101, writ denied, 97-0487 (La.4/18/97), 692 So.2d 449, a Russian seaman was injured in Spanish waters aboard a Russian vessel. This Court did not consider whether Section 688(b) precluded the assertion in a Louisiana court of a claim based on foreign law.
The appellants' argument that their suit under Louisiana and foreign law remains viable under the "saving to suitors" clause is without merit. They rely on American Dredging Co. v. Miller, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). There, the Supreme Court held that, in admiralty cases filed in a state court under the Jones Act and the "saving to suitors" clause, federal law does not preempt state law regarding the doctrine of forum non conveniens. In American Dredging, the plaintiff was a Mississippi resident who was employed by a Pennsylvania corporation with its principal place of business in New Jersey and with a registered agent for service of process in New Orleans. Miller was injured on the Delaware river while in the course and scope of his employment upon a vessel owned by American Dredging. The Supreme Court reasoned that, in exercising in personam jurisdiction over maritime actions under the "saving to suitors" clause, a state court could adopt such remedies, and attach to them such incidents, as it sees fit, so long as those remedies do not "wor[k] material prejudice to the characteristic features of the general maritime law or interefer[e] with the proper harmony and uniformity of that law in its international and interstate relations." 510 U.S. at 447, 114 S.Ct. at 985 (quoting Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)). Noting that the doctrine of forum non conveniens "is nothing more or less than a supervening venue provision," 510 U.S. at 447, 114 S.Ct. at 988, the Supreme Court concluded that the doctrine was neither a "characteristic feature," nor a doctrine whose uniform application is necessary to maintain the "proper harmony" of maritime law. 510 U.S. at 453, 114 S.Ct. at 985.
In this case, allowing the appellants' maritime tort claims, whether premised under state or foreign law, to proceed in state court would disrupt the "proper harmony" of maritime law as presently set forth in Section 688(b) and would materially prejudice the characteristics of the general maritime law. By amending Section 688(b) to bar Jones Act claims and any other maritime claims from foreign seamen in specific circumstances, Congress preempted the state law remedies which the appellants seek here. If the state court is forced to entertain state and foreign maritime tort claims from foreign seamen otherwise barred from bringing Jones Act and general maritime law claims, the characteristics of the general maritime law would be severely compromised. The district court correctly recognized this undesirable result in maintaining the defendants' *1030 exception of no right of action with regard to the appellants.
As the Louisiana Supreme Court has acknowledged, state law may only supplement general maritime law when there is "no applicable contrary federal legislation." Green v. Industrial Helicopters, Inc., 593 So.2d 634, 644 (La.1992). In this case, federal legislation in the form of Section 688(b) precludes the appellants from asserting their maritime tort claims in Louisiana courts. Accordingly, we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] McDermott International, Inc. and its subsidiary, J. Ray McDermott, S.A.
[2] CCC Fabricaciones Y Construcciones, S.A. de C.V., the owner and operator of DLB-269, and Corporacion de Industrias Y Construcciones, S.A. de C.V., the employer of the Mexican crew-members.
[3] Section 688(b) provides:

(1) No action may be maintained under subsection (a) of this section [the Jones Act] or under any other maritime law of the United States for the maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred:
(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resourcesincluding but not limited to drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or transporting supplies, equipment or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces; and
(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions. As used in this paragraph, the term "continental shelf" has the meaning stated in article I of the 1958 Convention on the Continental Shelf.
(2) The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person
(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or
(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.
[4] Section 1333 provides in pertinent part:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
An injured seaman may assert his Jones Act and general maritime claims in state court through the "saving to suitors" clause, which grants concurrent jurisdiction in maritime cases to the courts of the states. Green v. Industrial Helicopters, Inc., 593 So.2d 634, 637 (La.1992).
[5] The device of forum non conveniens is a procedural rule of the common law. Kassapas v. Arkon Shipping Agency, Inc., 485 So.2d 565 (La. App. 5th Cir.), writ denied, 488 So.2d 203 (La. 1986). Article 123 of the Louisiana Code of Civil Procedure sets forth the doctrine of forum non conveniens in Louisiana. The Article reads in part:

B. Except as provided in Paragraph C, upon the contradictory motion of any defendant in a civil case filed in a district court of this state in which a claim or cause of action is predicated solely upon a federal statute and is based upon acts or omissions originating outside of this state, when it is shown that there exists a more appropriate forum outside of this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice, the court may dismiss the suit without prejudice; however, no suit in which the plaintiff is domiciled in this state, and which is brought in a court which is otherwise a court of competent jurisdiction and proper venue, shall be dismissed pursuant to this Article. In the interest of justice, and before the rendition of the judgment of dismissal, the court shall require the defendant or defendants to file with the court a waiver of any defense based upon prescription, provided that a suit on the same cause of action is commenced in a court of competent jurisdiction within sixty days from the rendition of the judgment of dismissal.
C. The provisions of Paragraph B shall not apply to claims brought pursuant to 46 U.S.C.App. § 688 or federal maritime law.
[6] The Fifth Circuit stated, "Section 688(b) denies a Jones Act remedy and any other remedies under general maritime law to foreign seamen in the offshore drilling industry when they are injured in another country's territorial waters, unless neither the country where the injury occurred nor the seaman's home country provide any remedy." Camejo, 838 F.2d at 1376-77 (emphasis supplied).
[7] "[T]he General Maritime Law (also known as the general maritime lawlower case!) of the United States is a branch of federal common law that furnishes the rule of decision in admiralty and maritime cases in the absence of preemptive legislation." Schoenbaum, § 5-1, p. 151.
[8] The Fifth Circuit summarized the Grubart criteria as follows:

According to Grubart, the "connection" inquiry for admiralty tort jurisdiction involves two inquiries. A court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 534, 115 S.Ct. at 1048.... Second, a court must determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. For this second inquiry, [the court] must ask "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the case at hand." at 539-40, 115 S.Ct. at 1051.
Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1118-19 (5th Cir.1995). In Coats, the worker was injured while repairing and maintaining a jack-up rig in navigable waters. The court found that the activity giving rise to the accident had a sufficient connection to traditional maritime activity to support the exercise of admiralty tort jurisdiction.
[9] In Dow Chemical Co. v. Alfaro, 786 S.W.2d 674 (Tex.1990), the Texas Supreme Court, under the Texas Open Forum Act, Tex. Civ. Prac. & Rem. Code § 71.031, ruled that the doctrine of forum non conveniens had been statutorily abolished in Texas as to death and personal injury actions. Since then, the Texas legislature has provided a forum non conveniens procedure for cases filed after September 1, 1993. See Tex. Civ. Prac. & Rem.Code § 71.051; see also 21 Int'l Holdings, Inc. v. Westinghouse, 856 S.W.2d 479 (Tex.App. San Antonio 1993, no writ).
[10] In an unpublished case, another Texas appellate court reached the same conclusion. In Stier v. Reading & Bates Corp., 1996 Tex. App LEXIS 3820, 1996 WL 490625 (Tex.App.Houston [14th Dist.] August 29, 1996, n.w.h.), a German citizen and resident of Brazil was injured on a mobile offshore drilling vessel in the territorial waters of Trinidad. Steir asserted claims under the Jones Act, the general maritime law, Texas law, and the laws of Trinidad. The defendant successfully moved for summary judgment on the ground that Steir's claims were precluded and preempted by Section 688(b). On appeal, Steir abandoned his Jones Act and general maritime claims, but he continued to assert that his state law and foreign law claims were not precluded or preempted by Section 688(b). The appellate court disagreed, holding that Section 688(b) precluded or preempted both state law and foreign law claims. The court stated, "To hold otherwise would be to defeat Congress's intent in amending the Jones Act, namely, to curtail forum shopping by foreign plaintiffs." Id., pp. *5-*6, 1996 WL 490625 p. *2.