739 So.2d 256 (1999)
Johnny C. TAYLOR
v.
Sheila Maulding TAYLOR.
No. 97 CA 1565.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*257 Penrose C. St. Amant, St. Amant & St. Amant, Gonzales, for Plaintiff-Appellee Johnny C. Taylor.
Helen M. Edgington, Baton Rouge, for Defendant-Appellant Sheila Maulding Taylor.
Before: LeBLANC, FOGG, and PARRO, JJ.
*258 PARRO, J.
Sheila Maulding Taylor appeals a judgment dismissing her reconventional demand for reimbursement of all or a portion of the mortgage payments she paid on property that was the family home during her marriage to Johnny C. Taylor. Finding legal error in the trial court's application of the law, we reverse and render.

BACKGROUND
Johnny C. Taylor (Johnny) and Sheila Maulding Taylor (Sheila) were married in October 1978 and judicially separated in January 1985. During their marriage, the home in which they and their son lived was Johnny's separate property. Some time after their judicial separation, Johnny executed an act of cash sale to Sheila that stated he conveyed full ownership of the home to her. An unrecorded counter letter was executed contemporaneously with the act of sale, stating that the purported sale was in fact a donation of an undivided one-half interest in the subject property.
In an attempt to resolve the ownership interest in this property, Johnny filed a petition to reform the act of cash sale. Both parties agreed at trial that the intent had been to donate only an undivided one-half interest to Sheila. Based on the evidence presented, the trial court ordered the reformation of the act of cash sale to reflect that Johnny transferred an undivided one-half interest in the property to Sheila. This portion of the judgment was not challenged. Rather, Sheila appealed and assigned as error the trial court's ruling pertaining to her reconventional demand.[1]
Johnny stipulated that Sheila paid all the mortgage notes on the house after they separated, and he did not contribute any portion of those payments. He testified that he transferred an undivided one-half interest to Sheila after they separated, because she needed a place to live with their son, Robbie, and she would be more comfortable with the situation if she had an ownership interest in the house. His understanding was that Sheila and Robbie would live in the house, "rent-free," and she would pay the mortgage note. When Robbie reached age eighteen, they would sell the house, and Johnny would get one-half the equity from the sale proceeds. Johnny said he never agreed to pay all or part of the mortgage payments, and Sheila never asked him for these payments.
Sheila testified that after they separated, she was ready to pack up and move with Robbie to another place, because she had no control over the home and Johnny continued to come and go as he pleased whenever his construction job allowed him to be in the area. At this point, Johnny decided to convey a one-half interest to her so she would stay there, with the understanding that he would eventually get his one-half share of the equity in the home. However, she testified she also understood that, in order to retain his one-half interest in the home, Johnny would pay one-half the mortgage payments. These payments would serve as a portion of his child support, in addition to the court-awarded support of $100 per month. She stated:
Well, if Johnny had been paying half the house note and I was paying half the house note, that's actually both of us providing a home for Robbie. The other $100 was what I considered fair for the rest of taking care of him during the month. So this was all consideration over raising Robbie and what it takes to *259 raise a child. Plus, I thought he was getting a deal because most fathers have to pay child support [and] at the end of 18 years, they don't get anything back. [Johnny] was going to get half of whatever we sold the house for. So it was like, you know, he didn't have any way of losing, you know?
Sheila indicated this understanding was based on conversations she had with Johnny concerning their support arrangement for Robbie. However, Johnny never paid either the mortgage note or the monthly support; she continued paying the mortgage note because if she had not, the bank would have foreclosed. She eventually obtained a judgment for a portion of the past-due child support, and in her reconventional demand in this suit, requested reimbursement for one-half the mortgage payments she had made over the years. In the alternative, if the court did not recognize her one-half interest in the property, she sought reimbursement of the full amount of those payments.
The documentary evidence introduced at trial included the act of cash sale dated September 25, 1986, in which Johnny purportedly transferred full ownership of the subject property to Sheila for $2,000. The act of cash sale also states, "Buyer is aware that there are two mortgages encumbering this property."[2] There is no assumption by Sheila of any mortgage in the document. The counter letter of the same date was also in evidence. It stated that the conveyance executed that same day purportedly transferred an "undivided one-half (½) interest in and to" the subject property, and further stated that in fact, "the said transfer was a donation," and the recited $2,000 consideration was not paid. Also in evidence was an act of cash sale showing Johnny acquired the property in January 1972, and a copy of a special mortgage and vendor's lien dated June 16, 1978, in which Johnny granted a mortgage in favor of Ascension Savings and Loan Association.[3] Sheila did not sign this document. The parties stipulated that Sheila paid all the mortgage payments beginning in November 1984, after the parties physically separated.
In written reasons for judgment, the trial court gave a statement of applicable law, as follows:
One who asserts an obligation has the burden of establishing it. Where a party asserts an obligation which is not reflected in the written instrument executed by the parties, the burden of proof rests upon the one asserting such an allegation to establish the same by "clear and convincing proof."
The court concluded, based on this law:
There was no evidence presented, other than [Sheila's] statement, that [Johnny] was to pay one-half of the house note. At the time of the transfer, [Johnny] had an equity interest in the home of about $30,000.00. [Sheila] has benefited by the transfer in that she now owns a one-half interest in [Johnny's] separate property. Additionally, she has been living in the home without having to pay [Johnny] any rent as it relates to his one-half interest. The Court finds it hard to believe that [Johnny] would transfer one-half interest in his separate property to [Sheila] and at the same time agree to pay one-half of the house note and allow her to stay in the home rent free.
Applying this reasoning, the court denied Sheila's reconventional demand for reimbursement of any portion of the mortgage payments. In this appeal, Sheila alleges this decision was based on an incorrect application of the law.

*260 STANDARD OF REVIEW AND APPLICABLE LAW
Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. See O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1238 (La.App. 1st Cir.1990); Minor v. Casualty Reciprocal Exchange, 96-2096 (La.App. 1st Cir.9/19/97), 700 So.2d 951, 953, writ denied, 97-2585 (La.12/19/97), 706 So.2d 463. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. See Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975); Franklin & Moore v. Gilsbar, Inc., 95-1520 (La.App. 1st Cir.5/10/96), 673 So.2d 658, 660.
A party who demands performance of an obligation must prove the existence of the obligation. A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction. LSA-C.C. art. 1831. When a party asserts an obligation that is not reflected in the written instrument executed by the parties, the burden of proof rests upon the one asserting such an allegation to establish the true intent of the parties by "clear and convincing" evidence. See Valhi v. Zapata, 365 So.2d 867, 870 (La.App. 4th Cir.1978).
The legal principles governing ownership in indivision, that is, ownership of the same thing by two or more persons, were added to the Louisiana Civil Code by Acts 1990, No. 990, § 1, effective January 1, 1991, and are found in Articles 797 through 818.[4] Before the enactment of these articles, the legal principles embodied in them were developed by the courts, with guidance from legal scholars. See, e.g. Moody v. Arabie, 498 So.2d 1081, 1085 (La.1986); Frazier v. Harper, 600 So.2d 59, 62 (La.1992). In situations involving co-ownership of property, these legal principles generally were based on quasi contract, particularly negotiorum gestio, currently found in Civil Code articles 2292 through 2297.[5]See Taylor v. Woodpecker Corp., 93-0781 (La.App. 1st Cir.3/11/94), 633 So.2d 1308, 1313; Smith v. Hudson, 519 So.2d 783, 786 (La.App. 1st Cir.1987).
Before the revision, Louisiana Civil Code article 2292 stated, in pertinent part:
Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.
Quasi contracts were defined in Article 2293, which provided:
Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
The two principal kinds of acts giving rise to quasi contracts were described in Article 2294 as the transaction or management of another's business and the payment of a thing not due.
The management of the business of another is a typically civilian institution known as "negotiorum gestio." According to Article 2295, this quasi contract comes about when a person, the gestor, voluntarily undertakes to manage another's affairs, *261 whether the recipient of the benefit of this management is aware of it or not. Kirkpatrick v. Young, 456 So.2d 622, 624 (La. 1984). The gestor is under the obligation to act as a prudent administrator, and the one whose business has been well managed is under an obligation to indemnify the manager in all personal engagements he has contracted and to reimburse him all useful and necessary expenses.[6] LSA-C.C. arts. 2298, 2299; Kirkpatrick, 456 So.2d at 624. In the context of co-ownership, the acts of a single co-owner, if useful to all, are ratified as a de facto agency, or negotiorum gestio. Each co-owner may force the others to contribute to the costs of maintenance and conservation of the common thing in proportion to their interests. Moody, 498 So.2d at 1085.

ANALYSIS
Sheila argues that, although the trial court correctly cited the applicable law regarding the burden of proof when an obligation is asserted that is not reflected in the written documents, the court incorrectly applied that burden of proof. She urges that because the written documents show that only Johnny was obligated to pay the debt secured by the mortgage to the bank, he bore the burden of proving that she had assumed all or a portion of that debt, because there was no written assumption.
This argument is legally correct, and the evidence supports Sheila's contention that Johnny failed to carry his burden of proof. The mortgage document shows Johnny was the only person obligated to make the mortgage payments. Johnny's testimony is the only evidence he submitted to support his position that Sheila had agreed to assume the obligation to pay the mortgage note. Certainly, this does not rise to the level of "clear and convincing" evidence, especially in light of Sheila's testimony to the contrary. Moreover, her acceptance of his donation of an undivided one-half interest in the property did not obligate Sheila to pay the mortgage payments. Therefore, Johnny failed to prove the existence of an obligation by Sheila to pay his debt.
Sheila claims that, since she was not obligated to make the mortgage payments, she is entitled to reimbursement from Johnny, because her payments preserved his ownership interest in the property. After a thorough review of the evidence and the applicable law, we agree. By continuing to make the payments, she prevented foreclosure by the bank and preserved Johnny's interest in the property, as well as her own. She did so with the intent to benefit him, such that he would receive a portion of the proceeds from the eventual sale of the property. In addition, Johnny benefited to the extent of reduced child support. In her voluntary management of Johnny's affairs, Sheila paid what she was not obligated to pay, and she is therefore entitled to reimbursement from Johnny for the amounts paid on his behalf.
In her reconventional demand, Sheila asked for reimbursement of one-half the mortgage payments paid by her, in the event the court reformed the act of cash sale to reflect that Johnny retained an undivided one-half ownership interest in the property. Because the court did recognize her as the owner of an undivided one-half interest in the property, the payments she made inured to her benefit to the extent of one-half of the amounts paid. She agreed that she always accepted an obligation to pay one-half the mortgage payments, and expected Johnny to also pay one-half. Under the applicable legal principles, she may force Johnny to contribute to the costs of maintenance and conservation of the common thing in proportion *262 to his interest.[7] Accordingly, we find Sheila, as a prudent administrator, is entitled to reimbursement from Johnny to the extent of one-half of the mortgage payments made from November 1984.[8]
The evidence in the record shows the mortgage payments paid by Sheila from November 1, 1984, through March 11, 1996, totaled $66,843. These payments benefited Johnny to the extent of his one-half undivided interest in the property. Accordingly, Sheila is entitled to reimbursement in the amount of $33,421.50, plus legal interest from date of judicial demand. The trial date in this matter was March 14, 1996. The record does not indicate whether or by whom any mortgage payments were made after March 11, 1996. To the extent any additional mortgage payments were made by either of these co-owners after that date, allocation of the obligation and reimbursement, if any, shall be in accordance with the percentage of ownership of each.

CONCLUSION
The judgment of the trial court denying Sheila's reconventional demand and dismissing her claim for reimbursement is reversed. Judgment is entered in favor of Sheila on her reconventional demand. Johnny is ordered to pay Sheila $33,421.50, plus legal interest from date of judicial demand, plus costs. To the extent any additional mortgage payments were made by either Johnny or Sheila after the trial, allocation of the obligation and reimbursement, if any, shall be in accordance with the percentage of ownership of each. All costs of this appeal are assessed against Johnny.
REVERSED AND RENDERED.
NOTES
[1] When this court reviewed the record on appeal, we noted that Sheila's answer and reconventional demand were not a part of the record, although both parties and the trial court referred to these pleadings. Accordingly, we remanded the case for correction of the record and inclusion of the reconventional demand and all exhibits that were introduced at trial. Taylor v. Taylor, 97-1565 (La.App. 1st Cir.9/25/98), 731 So.2d 549 (unpublished opinion). The record was supplemented in accord with this court's instructions, and we now address the merits of Sheila's claim.
[2] One mortgage was actually an attorney's lien for legal services in connection with a personal injury claim; it was eventually paid out of settlement proceeds.
[3] This mortgage actually covered the subject property and portions of the two adjacent lots.
[4] Article 806 deals with expenses of maintenance and management, and states that if a co-owner has incurred necessary expenses paid to a third person, that co-owner is entitled to reimbursement from the other co-owner in proportion to their shares. If that co-owner had the enjoyment of the thing held in indivision, his reimbursement is to be reduced in proportion to the value of the enjoyment.
[5] Before January 1, 1996, the Louisiana Civil Code articles on quasi contracts were found in articles 2292 through 2313. These were revised, amended, and reenacted by Acts 1995, No. 1041, § 3. Because the events in this case transpired between November 1984 and the trial date, March 1996, this opinion will refer to the pre-amendment text of the quasi contract articles unless otherwise noted.
[6] Effective January 1, 1996, these principles are found in Article 2297, which states:

The owner whose affair has been managed is bound to fulfill the obligations that the manager has undertaken as a prudent administrator and to reimburse the manager for all necessary and useful expenses.
[7] Sheila attempted to introduce evidence of maintenance expenses she incurred, in addition to the mortgage payments on the house. However, because her reconventional demand did not request reimbursement for any additional expenses in connection with maintenance and upkeep on the house, the trial court ruled this evidence was inadmissible. Sheila did not object to this ruling or assign it as error. Our review of the pleadings reveals that the reconventional demand cannot be interpreted as a request for these additional expenses; it asks only for reimbursement of mortgage payments. Therefore, this ruling of the trial court was correct.
[8] If current Civil Code article 806 were applied to the payments Sheila made after January 1991, Johnny might be entitled to some reduction in his reimbursement for the rental value of the house. However, he made no request for such reduction and there is no evidence in the record concerning the rental value of the house. Furthermore, the additional benefit Johnny derived in the form of reduced child support would very likely offset any such rental value. Accordingly, we make no adjustment to Sheila's reimbursement for the rental value of the property.