**Byron P. CLEMENTS and Mark W. Clements, Appellants,**

v.

**GAMBLERS SUPPLY MANAGEMENT COMPANY and Sodak Gaming Iowa, Inc. a/k/a Sodak Gaming, Inc., Appellees.**

No. 98–1817.

Supreme Court of Iowa.

April 26, 2000.

Rehearing Denied May 15, 2000.

Timothy S. Jacobson of Parke O'Flaherty, Ltd., La Crosse, Wisconsin, and Deborah Hughes, Cedar Rapids, for appellants.

E. David Wright and Christopher R. Paar of Norman, Gilloon, Wright & Hamel, P.C., Dubuque, for appellees.

CARTER, Justice.

Byron P. Clements and Mark W. Clements, licensed ship captains employed by the management company for a riverboat casino in Marquette, Iowa, appeal from adverse judgment in an action seeking damages for wrongful discharge. The district court dismissed their claims, premised on state law, because it concluded that those state law claims were preempted by federal maritime law. After reviewing the record and considering the arguments presented, we disagree with the district court's conclusion. That judgment is reversed.

Byron and Mark Clements were employed by defendant Gamblers Supply Management Company (Gamblers Supply) commencing in 1994. Byron was the director of marine operations, and Mark was the manager of marine operations. Both Byron and Mark were licensed captains. Gamblers Supply operated a casino on the Miss Marquette Riverboat. At the time of the Clements' employment, the riverboat was required to leave the dock a certain number of times per year.

When the summary judgment motion papers are viewed most favorably towards the plaintiffs, it appears that Byron and Mark discovered that their employer was violating various federal laws and regulations regarding inspection and repair of the riverboat. They confronted the management about these violations and indicated that they were concerned about the safety of the passengers and did not want to jeopardize their captains' licenses. In September 1995 Byron informed the riverboat management that he would not cooperate in structural modifications that would affect the boat's stability in the absence of express Coast Guard approval. The management expressed disapproval of his decision and terminated his employment on October 2, 1995. Mark's employment was terminated on June 28, 1996.

Byron and Mark filed petitions against Gamblers Supply and its parent company, defendant Sodak Gaming, alleging state law claims for wrongful termination. They contended they were terminated because they refused to violate federal safety regulations. The district court granted defendants' motion for summary judgment on the basis that the plaintiffs were "seamen" and that federal maritime law preempted their state law claims. On appeal the Clements contend that the district court incorrectly decided the preemption issue and that Congress did not intend to preempt all state law claims by maritime employees.

In granting summary judgment, the district court relied on three decisions of federal courts. These were *Meaige v. Hartley Marine Corp.*, 925 F.2d 700 (4th Cir. 1991); *Garrie v. James L. Gray, Inc.*, 912 F.2d 808 (5th Cir.1990); and *Feemster v. BJ–Titan Services Co.*, 873 F.2d 91 (5th Cir.1989). The Clements urge that two of the three cases relied on by the district court, *Garrie* and *Feemster* involve wrongful discharge claims under federal law. Those cases do not purport to foreclose

related state law claims on a preemption theory. The Clements further argue that, although the *Meaige* decision does recognize the preemption of state law wrongful discharge claims based on a policy of uniformity in maritime litigation, this legal conclusion does not represent and is inconsistent with the current federal law of preemption.

We agree that the *Garrie* and *Feemster* cases pertain to issues involving a seaman's right to recover under federal law and do not speak to the preemption issue. *Meaige,* on the other hand, does speak to the issue of preemption of state law claims. After upholding the dismissal of the plaintiff's wrongful discharge claim under federal maritime law, the court in *Meaige* addressed his companion state law claim as follows:

> We also affirm the district court's judgment dismissing appellant's action for failure to state a claim under West Virginia common law.... Appellant and the district court failed to recognize the exclusive nature of federal admiralty law....
>
> ... In this case, there is a body of federal maritime jurisprudence relating to wrongful discharge, and turning to West Virginia for the rule of decision would clearly undermine uniformity in federal admiralty law.

*Meaige,* 925 F.2d at 702–03.

The Clements urge that the *Meaige* court's reliance on the need for a uniform maritime law as the primary basis for its conclusions extends the need for uniformity too far. They rely on the views on uniformity expressed in *Ellenwood v. Exxon Shipping Co.,* 984 F.2d 1270 (1st Cir. 1993). In that case, the court, while considering whether a discharged seaman could premise a claim under a state employment discrimination statute, rejected the employer's argument that application of state law would defeat uniformity in federal maritime litigation. The court dealt with that issue as follows:

Once again, however, Exxon heralds the need for uniformity without an appreciation for the boundaries of its relevance. All state laws, if given effect in admiralty cases, will interfere to a degree with the uniformity of admiralty law. But when Congress established a separate admiralty jurisdiction and empowered the judiciary to develop substantive maritime principles for use nationwide, it simultaneously assured that state law would continue to play some role in maritime affairs through the "saving to suitors" clause. This provision allows plaintiffs to pursue, in addition to maritime relief, ordinary civil remedies provided by state law, so long as they do not conflict with the national substantive maritime law.

*Ellenwood,* 984 F.2d at 1279 (citations and footnotes omitted).

The "saving to suitors" clause referred to in the *Ellenwood* opinion had its genesis in the Judicial Act of 1789 and is currently codified as follows in 28 U.S.C. § 1333(1):

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

In *American Dredging Co. v. Miller,* 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), the Supreme Court recognized that the consequence of exclusive federal jurisdiction in maritime matters is that states may not provide a remedy in rem for any cause of action within admiralty jurisdiction. *American Dredging Co.,* 510 U.S. at 446–47, 114 S.Ct. at 985, 127 L.Ed.2d at 293. In exercising in personam jurisdiction, however, the Court recognized that, under the "saving to suitors" clause, a state court may adopt such remedies and attach to them such incidents as it sees fit so long as it does not attempt to make changes in the substantive maritime law. *Id.* at 447, 114 S.Ct. at 985, 127 L.Ed.2d at 293. In speaking of the need for uniformi-

ty, the Court indicated that the requirement of uniformity is not absolute. The Court indicated that, while state law must yield to the needs of a uniform maritime law, this limitation still leaves the states a wide scope. *Id.* at 451–52, 114 S.Ct. at 987, 127 L.Ed.2d at 296. The *American Dredging Co.* decision expands the areas in which state laws may be imposed beyond the rigid dictum of this court in *Pfeiffer v. Weiland,* 226 N.W.2d 218, 220 (Iowa 1975).

The *Meaige* opinion on which the district court relied suggests that the "body of federal maritime jurisprudence relating to wrongful discharge" is an impenetrable body of law that fails to recognize a remedy for termination of employment as retaliation for an employee's assertion of concern for the safety of a ship and its passengers. We do not read the federal cases in this light. Federal courts have recognized a maritime common-law cause of action for wrongful discharge. *Smith v. Atlas Off–Shore Boat Serv., Inc.,* 653 F.2d 1057, 1063 (5th Cir.1981); *Seymore v. Lake Tahoe Cruises, Inc.,* 888 F.Supp. 1029, 1035 (E.D.Cal.1995) (upholding state law claim for wrongful discharge based on refusal to place unseaworthy vessel in service). In addition, Congress has recognized that a ship owner may not discharge a master or other supervisory employee for reporting violations of Coast Guard regulations. 46 U.S.C. § 2114(a).

The rule barring state claims that directly conflict with basic maritime principles may at times present a fine line in its application. *See American Dredging Co.,* 510 U.S. at 452–53, 114 S.Ct. at 987–88, 127 L.Ed.2d at 296–97 ("It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible. . . ."). We conclude that no fundamental tenet of substantive maritime law is frustrated by the state law retaliatory discharge claims that the Clements are advancing in the present case.

The defendants have conceded for purposes of this appeal that Iowa law recognizes a cause of action for termination of an employee in a manner that offends against public policy. Brief for Appellees at 40. In *Smuck v. National Management Corp.,* 540 N.W.2d 669, 672 (Iowa App. 1995), the court of appeals held that termination based on a refusal to violate federal law would be contrary to public policy. Because the district court's ruling was based on a theory that federal law governed the rights of the parties to the exclusion of state law, the merits of the Clements' state law claims were not adjudicated in that court and are not now before this court. Because we conclude that the state law claim is not precluded by federal law, it must now be considered on its merits. The judgment of the district court is therefore reversed and the case remanded to that court for that purpose.

### REVERSED AND REMANDED.

All justices concur except LAVORATO, J., who takes no part.