823 So.2d 351 (2002)
Thomas H. WINKLER
v.
COASTAL TOWING, L.L.C. and T.L.C. Marine Service, Inc.
No. 2001 CA 0399.
Court of Appeal of Louisiana, First Circuit.
April 11, 2002.
*353 Robert E. McKnight, Jr., Russell B. Ramsey, New Orleans, Counsel for Plaintiff/Appellant, Thomas H. Winkler.
Joel Hanberry, Cut Off, Counsel for Defendant/Appellee, Coastal Towing, L.L.C.
Before: GONZALES, KUHN, and CIACCIO,[1] JJ.
GONZALES, Judge.
Coastal Towing, L.L.C. hired Mr. Thomas H. Winkler in November of 1998 to serve as captain on its various tug boats. On March 29, 2000, Mr. Winkler was working as captain of Coastal Towing's M/V Tampa Bay. At 10:30 p.m., Mr. Winkler received a message from a Coastal Towing customer directing him to bring two empty barges to Parker Rig 57 in Lake Hermitage. The work to be performed at Parker Rig 57 had been brokered by T.L.C. Marine Service, Inc.
Mr. Winkler had already worked more than 12 of the last 24 hours at that time. He responded he and the other licensed master on board could not captain the M/V Tampa Bay because of federal laws which provided that they could not be required to work more than 12 straight hours at sea, but that the vessel would proceed as soon as both or either of them had gotten sufficient sleep.
Mr. Winkler received similar messages directing him to proceed to Parker Rig 57 around midnight, at 2:00 a.m. and 4:00 a.m. on March 30, and he responded similarly. Mr. Winkler was subsequently informed by Coastal Towing agent James A. Prudhomme that he was being temporarily laid off because T.L.C. Marine Service disapproved of his refusal to proceed to Parker Rig 57.
Thereafter, Mr. Winkler filed suit against Coastal Towing and T.L.C. Marine Service asking for compensatory and equitable relief pursuant to La. R.S. 23:967. He asserted that he could not be required to work more than 9 of 24 hours when in port, or more than 12 hours at sea, except in an emergency when life or property were endangered, as provided in 46 U.S.C. § 8104(b), 46 C.F.R. § 15.705 and § 15. 710.
Thereafter, T.L.C. Marine Service was dismissed from the suit without prejudice. Coastal Towing filed an exception of no cause of action to the claim. The trial court granted the exception of no cause of action and dismissed the suit. Mr. Winkler is appealing that judgment and makes the following assignment of error:
Whether, in granting the exception of no cause of action, the trial court erred as a matter of law in concluding that federal maritime law preempted application of La. R.S. § 23:967? [sic]
Mr. Winkler contends that he is raising a state law claim in state court pursuant to La. R.S. 23:967. Coastal Towing contends that this is a Jones Act general maritime claim and that La. R. 23:967 is preempted by federal law.

THE APPLICABLE STATUTES
46 United States Code § 2114 provides:
(a) An owner, charterer, managing operator, agent, master, or individual in charge of a vessel may not discharge or in any manner discriminate against a seaman because the seaman in good faith has reported or is about to report to the Coast Guard that the seaman believes that a violation of this subtitle, *354 or a regulation issued under this subtitle, has occurred.
(b) A seaman discharged or otherwise discriminated against in violation of this section may bring an action in an appropriate district court of the United States. In that action, the court may order any appropriate relief, including 
(1) restraining violations of this section; and
(2) reinstatement to the seaman's former position with back pay.
46 United States Code § 8104 provides in pertinent part as follows:
(b) On an oceangoing or coastwise vessel of not more than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title (except a fishing, fish processing, or fish tender vessel), a licensed individual may not be required to work more than 9 of 24 hours when in port, including the date of arrival, or more than 12 of 24 hours at sea, except in an emergency when life or property are endangered.
46 Code Of Federal Regulations § 15:705 provides in pertinent part:
(a) Title 46 of U.S.C. 8104 is the law applicable to the establishment of watches aboard certain U.S. vessels. The establishment of adequate watches is the responsibility of the vessel's master. The Coast Guard interprets the term "watch" to be the direct performance of vessel operations, whether deck or engine, where such operations would routinely be controlled and performed in a scheduled and fixed rotation. The performance of maintenance or work necessary to the vessel's safe operation on a daily basis does not in itself constitute the establishment of a watch. The minimal safe manning levels specified in a vessel's certificate of inspection takes into consideration routine maintenance requirements and ability of the crew to perform all operational evolutions, including emergencies, as well as those functions which may be assigned to persons in watches.
. . . .
(d) Subject to exceptions, 46 U.S.C. 8104(h) permits a licensed master or mate (pilot) operating a towing vessel that is at least 26 feet in length measured from end to end over the deck (excluding sheer) to work not more than 12 hours in a consecutive 24 hour work period except in an emergency. The Coast Guard interprets this, in conjunction with other provisions of the law, to permit licensed masters or mates (pilots) serving as operators of towing vessels that are not subject to the provisions of the Officers' Competency Certificates Convention, 1936, to be divided into two watches regardless of the length of the voyage.
46 Code Of Federal Regulations § 15:710 provides in part:
In addition to prescribing watch requirements, 46 U.S.C. 8104 sets limitations on the working hours of licensed individuals and crew members, prescribes certain rest periods, and prohibits unnecessary work on Sundays and certain holidays when the vessel is in a safe harbor. It is the responsibility of the master or person in charge to ensure that these limitations are met. However, under 46 U.S.C. 8104(f), the master or other licensed individual can require any part of the crew to work when, in his or her judgment, they are needed for:
(a) Maneuvering, shifting berth, mooring, unmooring;

*355 (b) Performing work necessary for the safety of the vessel, or the vessel's passengers, crew, or cargo;
(c) Saving of life on board another vessel in jeopardy; or,
(d) Performing fire, lifeboat, or other drills in port or at sea.
Louisiana Revised Statute 23:967 provides:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.
(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.
D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

ANALYSIS
The purpose of a peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La. 1993); Treen v. Republican Party of Louisiana, 99-2073 (La.App. 1st Cir.9/22/00), 768 So.2d 273, 277.
For the purpose of determining the validity of the exception, all well-pleaded allegations of fact are accepted as true, and, if the allegations set forth a cause of action as to any part of the demand, the exception must be overruled. Any doubts are resolved in favor of the sufficiency of the petition. Lambert v. Riverboat Gaming Enforcement Division, 96-1856 (La. App. 1st Cir.12/29/97), 706 So.2d 172, 175, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221. The petition must set forth material facts upon which the cause of action is based. The correctness of legal conclusions is not conceded for the purposes of a ruling on an exception of no cause of action. Lambert, 706 So.2d at 175.
In granting Coastal Towing's exception of no cause of action, the trial court relied upon Meaige v. Hartley Marine Corporation, *356 925 F.2d 700 (4th Cir.1991), cert. denied, 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991). In that case, Mr. Meaige was working as a pilot making a fuel run that could last as long as thirty hours. After making the run approximately ten times, while waiting for the barges to be reloaded, he telephoned his supervisor and requested a relief crew, explaining that he and the deckhand were too fatigued to safely make the trip. His supervisor refused to supply a relief crew, and, on the return trip, the barges were involved in a minor collision. Thereafter, Mr. Meaige's supervisor again requested that he make that same fuel run. Mr. Meaige refused, stating that he would not make any more fuel runs unless a relief crew was made available. At that time, his supervisor discharged him.
Mr. Meaige filed suit for wrongful termination, alleging that compliance with his employer's orders to make the run required him to operate the boat in excess of the maximum number of hours legally allowed in a 24-hour period. The district court dismissed the wrongful discharge claim for failure to state a cause of action under general maritime law or West Virginia common law. Mr. Meaige appealed that decision to the United States Court of Appeals, Fourth Circuit, which affirmed the trial court.
The question of the applicability of state law raises a legal question. See Saucier v. Players Lake Charles, LLC, 99-1196 (La.App. 3d Cir.12/22/99), 751 So.2d 312, 316. This matter is before us on review of an exception of no cause of action, another legal issue. So the appellate court need not give special weight to the findings of the trial court, but shall exercise its constitutional duty to review questions of law and render judgment on the record. Taylor v. Taylor, 97-1565 (La. App. 1st Cir.6/25/99), 739 So.2d 256, 260, writ denied, 99-2202 (La.11/5/99), 750 So.2d 188. The maritime nature of this case does not vary that result because state courts sitting in maritime cases apply state standards of review. Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 96.
In Green v. Industrial Helicopters, Inc., 593 So.2d 634 (La.1992), cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992), the plaintiff brought a strict liability claim under La. C.C. art. 2317 for damages arising out of a helicopter crash at sea. The trial court entered judgment for plaintiff, and defendants appealed. The third circuit court of appeal amended, affirmed, and remanded. Defendants applied for writs of certiorari and the Supreme Court remanded the case. On remand, the court of appeal reversed the trial court judgment. The plaintiff then applied for writ of certiorari. The Supreme Court reversed, reinstated the previous court of appeal judgment and affirmed, ruling that maritime law did not preempt La. C.C. art. 2317.
The Green court pointed out that, since the general maritime law is not a complete or all inclusive system, a federal court may adopt state statutory law and common law principles as the federal admiralty rule. State law and regulations may supplement federal maritime law when there is no conflict between the two systems of law, and the need for uniformity of law does not bar state action. 593 So.2d at 637.
The process of determining the applicability of state law in cases within the admiralty jurisdiction has been described as one of accommodation, entirely familiar in many areas of overlapping state and federal concern. Id. at 637-638, quoting Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961).
Thus, state law may be applied where the state's interest in a matter is greater than the federal interest. This principle, applying the state rule in a matter *357 within the admiralty jurisdiction when the state interest outweighs the federal interest, has been recognized by the United States Supreme Court. Green, 593 So.2d at 638.
In Green, the plaintiff passenger was a Louisiana resident, the helicopter pilot was a Louisiana resident, Industrial Helicopters was a Louisiana corporation, and the helicopter was stored in a hangar in Louisiana. The contract of carriage between plaintiffs employer and the defendants was confected in Louisiana. The mission started in Louisiana, and was to end in Louisiana. The court found that the plaintiff and defendants, more likely than not, expected to be governed by Louisiana law. Thus, the court found, a Louisiana court should respect Louisiana law unless there was a federal impediment to application of that law contained in federal legislation or a clearly applicable rule in the general maritime law. Id. at 638.
Applying the analysis of Green, we find that Louisiana has a strong interest in applying its own law in this case. Mr. Winkler is a Louisiana resident, and Coastal Towing is a Louisiana limited liability corporation with its registered office in Lafourche Parish. Mr. Winkler was in Lafitte, Louisiana, when he refused the instructions to proceed to another job because doing so would violate the 12-hour rule. The job he refused would have commenced in Lafitte and ended in Lake Hermitage, Louisiana.
In Green, the court recognized that La. C.C. art. 2317 embodied a strong social policy to place liability with the owner or custodian of an injury-causing thing. Likewise, Mr. Winkler relies upon an explicit enactment of the Louisiana legislature, La. R.S. 23:967, which in part prohibits acts of reprisal by an employer against an employee who, in good faith, and after advising the employer of the violation of law, refuses to participate in an employment act or practice that is in violation of law.
A Louisiana court should respect Louisiana law unless there is some federal impediment to application of that law contained in federal legislation or a clearly applicable rule in the general maritime law. The general maritime rule authorizes application of state law as a supplement to the general maritime law. Green, 593 So.2d at 638.
The Green analysis of state law conflict with substantive maritime law encompasses three inquiries, which we apply to the present case. The first is whether applying La. R.S. 23:967 conflicts with an applicable Congressional pronouncement governing the same legal and factual circumstances. Absent a clearly applicable act of Congress, the court's second, much broader inquiry requires it to look to the general maritime law to determine if application of La. R.S. 23:967 would materially prejudice the characteristic features of the maritime law. The third step in our inquiry requires analyzing the scope of the uniformity requirement. The requirement of national uniformity in the area of maritime law has dictated that state law does not apply in certain situations. Id. at 639-642.
In the first inquiry, we look for clear conflict with the federal law. Examples of flatly contradictory state law are found in Dragon v. Cooper/T. Smith Stevedoring, 98-1375 (La.App. 4th Cir.1/6/99), 726 So.2d 1006 and Coto v. J. Ray McDermott, S.A., 96-2701, 96-2702 (La.App. 4th Cir.3/18/98), 709 So.2d 1023, writ denied, 98-1443 (La.10/16/98), 726 So.2d 904, cert. denied, 526 U.S. 1050, 119 S.Ct. 1356, 143 L.Ed.2d 517 (1999).
In Dragon, the court refused to apply Louisiana tort law of negligent infliction of emotional distress arising out of asbestos exposure, which would allow recovery absent some form of physical impact, because *358 the United States Supreme Court had interpreted the applicable federal law as precluding emotional distress liability until and unless the plaintiff manifested symptoms of the disease. However, the court allowed the plaintiff to proceed with a claim for the expenses of future medical monitoring because there was no prohibition in the general maritime law against such a cause of action, and the need for uniformity in that maritime tort claim was minimal.
In Coto, the court held that Mexican citizens could not sue the defendant under state law because a Jones Act amendment specifically eliminated any remedy to a foreign seaman employed in the offshore mineral extraction industry under the facts of that case. The Coto court found that if it allowed the plaintiffs to sue under Louisiana law, the intent of Congress in amending the Jones Act in 1982 would be defeated.
There is no act of Congress which would be contradicted or contravened by La. R.S. 23:967. The only statute which speaks to the issue at hand is 46 U.S.C. § 2114, in which Congress enacted a claim for wrongful discharge in cases where seamen complain to the United States Coast Guard about illegal conditions aboard covered vessels. The application of La. R.S. 23:967 is actually consistent with federal law, because it supports compliance with 46 U.S.C. 8104(b) and promotes the maritime safety policy that Congress expressed in that statute. Further, finding an exact counterpart to La. R.S. 23:967 is not a prerequisite for application of La. R.S. 23:967. See Green, 593 So.2d at 638-639. It is the absence of law that state law is used to fill in. Just as La. C.C. art. 2317 was found to supplement the remedies available under general maritime law in Green, likewise, La. 23:967 supplements the remedies available under general maritime law in this case.
In the absence of clear conflict with federal law, we move to the second inquiry set out in Green, that is, whether applying La. R.S. 23:967 would materially prejudice the characteristic features of maritime law.
There are numerous judicially-endorsed exceptions to the seaman's at-will status, both in general maritime law itself and in the maritime law through application of non-preempted state laws that are analogous to Mr. Winkler's claim. In Clements v. Gamblers Supply Mgt. Co., 610 N.W.2d 847 (Iowa 2000), cert. denied, 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000), the court rejected the defendant's argument that at-will status defeats states' right to prohibit certain types of employment practices, including job terminations for certain prohibited reasons. As a result, the Clements court held that two boat captains were not preempted from pursuing wrongful discharge claims under state law based on allegations that their employer fired them for refusing to acquiesce in their employer's violation of federal safety regulations. That court concluded that no fundamental tenet of substantive maritime law was frustrated by the state law retaliatory discharge claims that the plaintiffs were advancing in that case.
Clements presents the same factual and legal scenario that Mr. Winkler's claim presents to this court. As pointed out in Clements, there already is a maritime common-law cause of action for wrongful discharge. An employer cannot legally discharge a seaman for refusing to get underway in an unseaworthy vessel, Borden v. Amoco Coastwise Trading Co., 985 F.Supp. 692 (S.D.Texas 1997); for refusing to sail because he believes to do so would endanger passengers, Seymore v. Lake Tahoe Cruises, Inc., 888 F.Supp. 1029 (E.D.Cal.1995); for testifying on behalf of a former co-worker in a Jones Act claim and for refusing to testify falsely for the *359 employer, Baiton v. Carnival Cruise Lines, Inc., 661 So.2d 313 (Fla. 3d DCA 1995); or for filing a personal injury claim, Smith v. Atlas Off-Shore Boat Service, Inc., 653 F.2d 1057 (5th Cir.1981). All of these causes of action derogate from at-will admiralty employment.
In Ellenwood v. Exxon Shipping Co., 984 F.2d 1270 (1st Cir.1993), cert. denied, 508 U.S. 981, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993), the court held that a seaman could sue the defendant under state laws prohibiting discrimination in employment against the disabled. The court found no conflict between state rights law and at-will employment (or any other maritime principle), finding that "nothing in substantive maritime law ... is even potentially at odds with state human rights statutes." 984 F.2d at 1280.
In Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wash.App. 268, 970 P.2d 828 (Div. 1, 1999), amended by, 975 P.2d 563 (Wash.App. Div. 1, 1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1072 (2000), a Jones Act seaman sued for sexual discrimination under Washington state law. The defendant argued that the state law was preempted. The appeals court reversed the trial court's dismissal of the claim as preempted, noting that the Washington citizen was allowed the protection of Washington law as applied to her Washington employer. In Belanger v. Keydril Co., 596 F.Supp. 823 (E.D.La. 1984), aff'd, 772 F.2d 902 (5th Cir.1985), the court held that a seaman did not have a claim for age discrimination under general maritime law, but allowed his age discrimination claim to proceed under Louisiana law. Clearly, general maritime law has allowed a variety of exceptions to at-will employment.
The Green court next considered whether the need for maritime uniformity overrode the local interest in applying state law. Applying La. R.S. 23:967 serves the federal interest in uniformity because its application is consistent with 46 U.S.C. § 2114, it would support compliance with 46 U.S.C. § 8104(b), and it would promote the maritime safety policy that 46 U.S.C. § 8104(b) expresses.
To the extent that La. R.S. 23:967 would detract from the uniformity of maritime law, the effect is permissible under Green's "maritime but local" concept. The uniformity requirement is tempered with a recognition that in some matters local concerns outweigh the federal need for a uniform admiralty rule.
The case relied upon by the trial court in granting the exception of no cause of action, Meaige, is not in uniformity with the preemption analysis set forth by the Louisiana Supreme Court in Green.
In conclusion, we find that federal maritime law does not preempt La. R.S. 23:967 in a case involving a Louisiana plaintiff, a Louisiana defendant, and facts that occurred solely in Louisiana. The application of La. R.S. 23:967 will not conflict with either specific federal maritime law or with the characteristic features of maritime law, nor would the application of La. R.S. 23:967 in this purely interstate dispute interfere with the uniformity of federal maritime law in its interstate or international relations.
Therefore, for the foregoing reasons, the trial court judgment which granted the exception of no cause of action is REVERSED, and the case is REMANDED for further proceedings. Costs of this appeal are assessed against Coastal Towing.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
Plaintiff's petition states a cause of action under La. R.S. 23:967, and the judgment sustaining the exception of no cause of action is properly reversed. With respect to the preemption issue, federal maritime *360 law does not completely preempt all state causes of action, but only those actions that are in conflict with it. Green v. Industrial Helicopters, Inc., 593 So.2d 634, 637 (La.1992), cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). A valid claim of preemption does not operate to preclude the bringing of state claims but rather constitutes a defense to such claims. See Snearl v. Mercer, XXXX-XXXX (La.App. 1st Cir.2/16/2001), 780 So.2d 563, writs denied, XXXX-XXXX, XXXX-XXXX (La.6/22/2001), 794 So.2d 800 and 801 and Ventura v. Cox Cable Jefferson Parish, Inc., 583 So.2d 1237 (La.App. 5th Cir.), writ denied, 588 So.2d 1117 (La.1991). Thus, the preemption argument is not properly raised in support of the exception of no cause of action. It does not defeat a well-pleaded petition which states a cause of action, although it may eventually serve as a valid defense to plaintiffs suit.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.