# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 99-30030

---

WARREN ROY JACKSON,

Plaintiff-Appellant,

VERSUS

NORTH BANK TOWING CORPORATION; ET AL,

Defendants,

NORTH BANK TOWING CORPORATION and J. RAY MCDERMOTT, INC.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

January 31, 2000

---

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

PER CURIAM:

Warren Jackson appeals the dismissal of his foreign law tort claims for negligence and maintenance and cure. Concluding that the Jones Act, 46 U.S.C. § 688, does not prohibit maritime claims brought pursuant to foreign laws, we reverse and remand.

## I.

Jackson, a non-resident alien and citizen of Honduras, was employed as a seaman by North Bank Towing Corporation, a Louisiana corporation, aboard M/V MARTHA E UGENIA, owned and operated by J. Ray McDermott, Inc. (with North Bank, collectively "defendants"). Jackson was injured when he fell aboard the vessel while it was engaged in offshore oil and gas exploration off the coast of Mexico.

Jackson asserted negligence claims pursuant to the Jones Act and, alternatively, the tort laws of Mexico and Honduras and the international *lex maritime*, and unseaworthiness claims pursuant to the maritime law of the United States, the laws of Mexico and Honduras, and the international *lex maritime*; additionally, he asserted a claim for maintenance and cure under the general

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

maritime law of the United States. The district court dismissed on the ground that the Jones Act bars foreign law claims by foreign seamen.

## II.

The issue is whether 46 U.S.C. § 688(b) bars not only claims made pursuant to the Jones Act or other maritime laws of the United States, but also foreign law claims. Jackson asserts that we should interpret the "clear and unambiguous" terms of § 688(b)(1) so as to bar only an "action . . . under subsection (a) of this section or under any other maritime law *of the United States*," and he contends that the district court erred by going beyond this clear text and by considering legislative intent to the contrary.

Section 688 provides, in pertinent part:

(b)(1) No Action may be maintained under subsection (a) of this section or under *any other maritime law of the United States* for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurredSS

(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resources . . .; and

(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions . . . .

(2) The provisions in paragraph (1) of this subsection *shall not be applicable if* the person bringing the action establishes that no remedy was available to that personSS

(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or

(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.

46 U.S.C. § 688(b) (emphasis added).

Jackson does not challenge the district court's determination that his American law claims are prohibited by the plain language of § 688(b)(1). Instead, he argues that because the subsection makes no mention of foreign law claims by foreign citizens, those claims are not barred by the plain text of the Jones Act. Accordingly, he asserts that the courts should not inquire into congressional intent.

The defendants reply that § 688(b)(1) should be read in light of § 688(b)(2), which provides that § 688(b)(1) "shall not be applicable if the plaintiff can prove that his remedies would be unavailable in either "the nation asserting jurisdiction over the area" or "the nation in which . . . [the injured] maintained citizenship or residency." § 688(b)(2)(A), (B). And the defendants correctly observe that there is no indication that Mexican or Honduran courts would be unavailable to Jackson.

Thus, defendants argue that to read § 688(b)(1) in isolation, as Jackson suggests, would effectively read § 688(b)(2)(A) and (B) out of the statute. They assert that if the "plain meaning" of § 688(b)(1) never bars foreign law claims by foreign seamen, then such seamen will never have to establish that no remedy was available to them under foreign laws.

The defendants are half right. That is, the plain meaning of § 688(b) provides that foreign seaman will never be barred from bringing *foreign* law claims in U.S. courts. That does not rob § 688(b)(2) of any meaning, however, because the exceptions set forth in that subsection will still apply to *United States* maritime claims brought by foreign seaman. Thus, for a foreign seaman to bring an action under any maritime law of the United States, he first must establish that foreign law remedies are not available to him in other fora.

2

It is true that this result arguably creates an anomaly whereby it will be easier for foreign seaman to get foreign law claims into U.S. courts than for them to get in maritime claims brought under United States law. The result also seems contrary to the legislative history of the Jones Act, which suggests that Congress did not intend for foreign seamen to be able to sue in American courts except where they would have no other available forum.[1]

Nonetheless, the plain text of the statute dictates this result. There is no ambiguity in § 688(b)(1); it simply does not refer to foreign law claims. Accordingly, federal courts are not barred from hearing them.

### III.

In sum, § 688(b)(1) bars only actions brought under the maritime law of the United States, and § 688(b)(2) does nothing to change that. It follows that the district erred in dismissing Jackson's claims brought under the laws of Mexico and Honduras and the international *lex maritime*.

REVERSED and REMANDED.

---

[1] *See, e.g.,* the comments of the co-sponsor of the 1982 amendment, Congressman Livingston:

> The clarification is that a foreign offshore oil and gas worker may not obtain a U.S. remedy for a work-related incident occurring over the Continental Shelf of a foreign nation if a remedy is available to the foreign worker in his home nation, or in the nation with jurisdiction over the accident site, if different. *If there is no remedy available in either of the nations*, then the foreign worker may seek a remedy in the United States.

128 Cong. Rec. 25,426 (1982) (emphasis added).

Similarly, Congressman Breaux advocated the enactment of § 688(b) by arguing:

> It is quite simple. We are saying to foreign seamen who work for U.S. companies that if they are injured, that if they have remedy in their own country, if they have a court remedy in their own country for the injury that they have received, that they have to first pursue that remedy in their own country. That is not a novel, unusual approach. It makes sense. It is logical. We are not telling them that they cannot have access to U.S. courts. They can have access to our courts *if they have no remedy available in their own country*.

128 Cong. Rec. 25,423 (1982) (emphasis added).

The comments of Senator Long during the Senate debate concerning the enactment of § 688(b) demonstrate the same view:

> The United States should not continue to export its remedies for foreign workers'
>                                                (continued...)

(...continued)
> work-related injury claims which arose in foreign waters. Since no other country allows its judicial system to be used by foreign citizens for incidents occurring within the jurisdiction of foreign nations, U.S. offshore service companies and their foreign subsidiaries are at a competitive disadvantage with their many foreign competitors.
>
> A reasonable solution is to clarify U.S. maritime tort laws to provide that a foreign worker engaged in mineral extraction activities in waters over the continental shelf of a foreign nation may not seek a remedy for his work-related injury in U.S. courts if he has remedy in his home country, or in the country with jurisdiction over the accident site, if different. Should there be no remedy overseas, the foreign worker would then, *and only then*, be able to adjudicate his claims in U.S. courts.

128 Cong. Rec. 29,924 (1982) (emphasis added).