895 So.2d 568 (2005)
Rosario SOARES
v.
TIDEWATER, INC., Tidewater Marine International, Inc., Zapata Gulf Marine International, Ltd.
No. 2004-CA-1154.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 2005.
Rehearing Denied March 31, 2005.
*569 Timothy J. Falcon, Jeremiah A. Sprague, Falcon Law Firm Marrero, LA, for Plaintiff/Appellant.
Charles A. Cerise, Jr., Marrick Armstrong, Robert N. Markle, Adams and Reese LLP, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge MICHAEL E. KIRBY).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiff-appellant, Rosario Soares, appeals a judgment granting Exceptions of No right/No Cause of Action[1] in favor of *570 two of the defendants, Tidewater, Inc. and Al Wasl Marine, Inc., L.L.C., appellees in this case, thereby dismissing the plaintiff's claim as to those two defendants only. The dismissal was "without prejudice to plaintiff's right to assert his claims in a court of competent jurisdiction." We affirm.
The plaintiff's claim arises out of an injury to his foot that eventually resulted in a partial amputation. The plaintiff claims that he was injured aboard a vessel operated by Tidewater. The appellees contend that he was injured at home. However, this factual dispute is not material to this appeal which is concerned solely with the plaintiff's right to assert his claim in a Louisiana state court.
Plaintiff originally sued Tidewater, Inc. as the vessel owner and/or operator; Tidewater Marine International, Inc., as the direct or indirect employer of the plaintiff and the owner and/or operator of the vessel; and Zapata Gulf Marine International, Ltd. as the owner and/or operator of the vessel. Plaintiff also alleged that the three aforementioned named defendants were a single business enterprise controlled by the first named defendant, Tidewater, Inc. The plaintiff alleged that his foot was injured while working aboard the M/V Mr. Nelson in navigable waters off the coast of the United Arab Emirates.
In a supplemental petition, the plaintiff named as additional defendants, Zapata Gulf Marine Operators, L.L.C.; Al Wasl Marine Ltd., allegedly a foreign partnership with Tidewater, Inc., Tidewater Marine, L.L.C., Twenty Grand Marine Service, L.L.C., Twenty Grand Offshore, Inc., and Pental Insurance Company, Ltd. The supplemental petition goes on to allege that all of the aforementioned additional defendants were "negligent either through the actions of their employees or through the unseaworthiness of the vessels, including but not limited to the Mister Nelson and/or the Mawddy Tide." Pental Insurance Company was alleged to provide insurance coverage for plaintiff's damages.
In a second supplemental petition, the plaintiff alleged that he had no remedy under either the laws of the nation asserting jurisdiction over the area in which he was allegedly injured or the laws of the nation of which he was a citizen.
Plaintiff filed a supplemental petition entitled the "Fourth Supplemental and Amending Petition." This supplemental petition names as an additional defendant, Al Wasl Marine, Ltd., but that defendant was already named in the plaintiff's second supplemental and amending petition. In this petition, the plaintiff alleges that he had an employment contract with Al Wasl Marine, Ltd. and that his injuries arose out of that contractual relationship.
Annexed to this fourth supplemental petition in the record are copies of all previous petitions, including one entitled "Plaintiff's Third Supplemental and Amending Petition" which is not noted separately in the table of contents of the record. In this third supplemental petition, the plaintiff drops all Louisiana state law claims.
Plaintiff filed a Fifth Supplemental and Amending Petition alleging that he is entitled *571 to recover under the laws of the United Arab Emirates and the laws of the Republic of India.
Motions were filed to strike both the fourth and fifth supplemental petitions that appear to be pending and are not at issue in this appeal.
The plaintiff filed a Sixth Supplemental and Amending Petition naming as an additional defendant, Jackson Marine, L.L.C.
The appellees' exceptions were premised on 46 U.S.C.App. § 688(b)[2] which they contend denies plaintiffs a Jones Act remedy or any other remedy under general maritime law to foreign seamen in the offshore energy industry when they are injured in another country's territorial waters or on the waters overlaying the continental shelf of another country, unless neither the country where the injury occurred nor the seaman's home country provides a remedy, citing Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374, 1376-77 (5th Cir.1988).
It is undisputed that the plaintiff is an Indian national. The plaintiff does not dispute the fact that if he was not injured at home, then he was injured in the territorial waters of the United Arab Emirates. As the issue of whether the plaintiff was injured at home is not currently before this Court, it is undisputed that we must proceed on the premise that the plaintiff is a foreign national (he is a citizen of India) and that he was injured in the territorial waters of the United Arab Emirates. Therefore, the judgment of the trial court is correct, unless either of the following contentions of the plaintiff is true: (1) Neither India nor the United Arab Emirates offer the plaintiff a remedy; or (2) the proper interpretation of 46 U.S.C.App. § 688(b) mandates that the United States court, in this case the trial court below, hear the case but apply foreign law, i.e., 46 U.S.C.App. § 688(b) is really a choice of law provision to be applied by Louisiana courts. While the trial court issued no written reasons for judgment, necessarily implicit in its decision are the findings that either the courts of India or the courts of the United Arab Emirates offer a remedy to the plaintiff and that, therefore, under 46 U.S.C.App. § 688(b) plaintiff has no *572 right of action to pursue a remedy in the courts of the United States.
The second of the contentions of the plaintiff enumerated above is identical in substance to the argument made before this Court by the plaintiff in Coto v. J. Ray McDermott, S.A., 96-2701, 96-2702, p. 4 (La.App. 4 Cir. 3/18/98), 709 So.2d 1023, 1026:
The appellants assert the district court erroneously determined the scope and interpretation of 46 U.S.C.App. § 688(b). They maintain that the section does not reference and has no application (either expressly or implicitly) to claims asserted under state or foreign law. They further argue that the section is simply a statutory choice-of-law provision which limits the application of "American" law in certain cases involving foreign offshore oil exploration. The appellants contend Section 688(b) was not intended to preclude foreign seamen from asserting foreign and state law claims in the courts of the United States. They note that, even though the federal courts do not have subject matter jurisdiction to hear legal actions where at least one of the plaintiffs and one of the defendants are aliens, state courts do have such subject matter jurisdiction, subject to the authority to dismiss the action under the doctrine of forum non conveniens. [Emphasis added.]
This Court expressly rejected this argument in a thoroughly considered analysis, including the following:
When it amended the Jones Act in 1982, Congress expressly eliminated a Jones Act remedy, as well as any other remedy under the general maritime law of the United States, to a foreign seaman employed in the offshore mineral extraction industry who is injured on waters overlying the outer continental shelf of a nation other than the United States, unless neither the country which had sovereignty over the outer continental shelf where the injury occurred nor the seaman's home country provides a remedy. 46 U.S.C.App. § 688(b). The purpose of the amendment was to protect United States companies active in the offshore oil and mineral extraction industry from the competitive disadvantage that may develop when foreign workers are allowed to forego the remedy available in their own or another country to pursue a claim in a court in the United States in the hope of availing themselves of either substantive or procedural advantages. See H.R.Rep. No. 97-863, at 2-4 (1982); c.f. Vaz Borralho v. Keydril Co., 710 F.2d 207 (5th Cir.1983). If we accept the appellants' proposition that a maritime tort claim barred by virtue of Section 688(b) may be entertained in any United States court under state or foreign law, the intent of Congress in amending the Jones Act in 1982 would be defeated. See 128 Cong. Rec. H7631-38 (daily ed. Sept. 28, 1982). We thus hold that the appellants have no Louisiana or Mexican law remedy in a Louisiana state court because the Jones Act and Congress's amendment thereof preempted any state or foreign law remedy that might have otherwise been available. [Emphasis added.]
Id., 96-2701, 96-2702, p. 5, 709 So.2d at 1026-1027.
This Court went on to reached the following conclusion, affirming the trial court's granting of the exception of no right of action:
If the state court is forced to entertain state and foreign maritime tort claims from foreign seamen otherwise barred from bringing Jones Act and general maritime law claims, the characteristics of the general maritime law would be *573 severely compromised. The district court correctly recognized this undesirable result in maintaining the defendants' exception of no right of action with regard to the appellants. [Emphasis added.]
Id., p. 11, 709 So.2d at 1029-1030.
Shortly after deciding Coto, this Court had the opportunity to decide the identical question again in Bolan v. Tidewater, Inc., 97-2020, pp. 3-4 (La.App. 4 Cir. 3/25/98), 709 So.2d 1059, 1060-1061. Again this Court affirmed the trial court's granting of the exception of no right of action. This Court discussed the amendment to the Jones Act, 46 U.S.C.App. § 688(b) that is the subject of the instant appeal:
In response to the large number of suits filed by foreign seaman in state and federal courts in this country against American companies, Congress amended the Jones Act in 1982 [adding 46 U.S.C.App. § 688(b)].
* * *
Plaintiff's argument is simple and straightforward. The statute does not explicitly bar claims under foreign or state law, and it should not be construed to mean what it does not say. On the other hand, this literal interpretation of the statute would frustrate the obvious intent of Congress in adopting the statute and would produce an absurd result.
Excerpts from the Congressional Record containing statements by members of the Louisiana Congressional delegation during the hearings on the amendment to the Jones Act demonstrate that they were concerned that United States companies engaged in the offshore oil and gas business were at a competitive disadvantage because foreign seamen were able to sue them in our federal and state courts. The Congressmen were also concerned about forum shopping and the expenses and case backlogs of our judicial systems. These concerns apply equally to suits by seamen who are not citizens or permanent resident aliens as those by our own citizens and they apply equally to claims brought by foreign seamen under the laws of the United States and those under the laws of foreign nations and the states of the United States. We are unable to conceive of any reason why Congress would have intended such a result. Basic principles of statutory construction preclude such an interpretation.
Id.
Thus, this Court has twice before carefully considered the precise argument made by the plaintiff in the instant case and in both instances has unequivocally rejected it. Moreover, the Third Circuit in Jackson v. North Bank Towing Corp., 98-1334 (La.App. 3 Cir. 3/3/99), 742 So.2d 1, after considering the issue, made the express determination to follow this Court's decisions in Coto and Bolan:
There is a question on whether the statutory construction of 46 U.S.C.App. § 688 precludes foreign plaintiffs from bringing only U.S. maritime claims or all claims. The legislative history of 46 U.S.C.App. § 688 makes it apparent that the intent of Congress is for the statute to cover all claims whether based in U.S. law or not. Just as the courts in Coto v. J. Ray McDermott, S.A., 96-2701, 96-2702 (La.App. 4 Cir. 3/18/98); 709 So.2d 1023 and Bolan v. Tidewater, Inc., 97-2020 (La.App. 4 Cir. 3/25/98); 709 So.2d 1059, writ denied, 98-1130 (La.6/19/98); 720 So.2d 1212, we find that 46 U.S.C.App. § 688 does apply and as such, if the plaintiff wishes to bring a claim he must satisfy either *574 (b)(2)(A)or(B) of the statute ... [[3]]
The plaintiff cites Oyuela v. Seacor Marine (Nigeria), Inc., 290 F.Supp.2d 713 (E.D.La.2003), in support of his argument that 46 U.S.C.App. § 688(b) is really a choice of law provision to be applied by Louisiana courts. But Oyuela is a federal district court opinion, relying entirely on a Texas Supreme Court decision rendered in Stier v. Reading & Bates Corporation, 992 S.W.2d 423 (Tex.1999), in order to reach a conclusion contrary to Coto, Bolan and Jackson. Moreover, the Oyuela court admits in footnote five of its opinion that, "A result adverse to this can be supported ..." We note that Stier cites no cases concerning 46 U.S.C.App. § 688(b) in support of its decision. As Coto, Bolan and Jackson are all based on careful reasoning and are decisions of courts of this state, we find them more persuasive and see no reason to deviate from what has been the consistent jurisprudence of this state and circuit.
The plaintiff asserts that Jackson v. North Bank Towing Corp., 201 F.3d 415 (5th Cir.2000)[4], reached a contrary result. This is true, but shortly thereafter the Fifth Circuit vacated that opinion, saying that it need not have addressed the U.S.C.App. § 688(b) interpretation question. Jackson v. North Bank Towing Corp., 213 F.3d 885, 888 (5th Cir.La.2000). Thus, the federal court Jackson case has no persuasive authority on this issue.
Therefore, as the only reported Louisiana state court decisions (including two from this Court) on this issue have carefully considered the contrary arguments and specifically rejected them, in the absence of any binding authority or more persuasive reasoning in support of the plaintiff's argument on this point, this Court will continue to follow its prior decisions in Coto and Bolan.
Having decided that it is appropriate for a Louisiana court to dismiss a plaintiff's claims if they fall under 46 U.S.C.App. § 688(b), the next step is to determine whether the plaintiff falls under the exception to 46 U.S.C.App. § 688(b) as set forth in 46 U.S.C.App. § 688(b)(2)(A) or (B). In order to make this determination we must first determine who has the burden of proof.
The burden of proof of establishing the exception of no right of action is on the exceptor. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748. State on Behalf of Jones v. Mallet, 97-611 (La.App. 3 Cir. 12/17/97), 704 So.2d 958.
In the instant case, the appellees-exceptors have borne this initial burden because the plaintiff does not contest the fact that he is a foreign national allegedly injured in another country's territorial waters or on the waters overlaying the continental shelf of another country. At that point, under 46 U.S.C.App. § 688(b), the burden shifts to the plaintiff to show that he has neither a remedy in the courts of the country where the injury occurred nor in the courts of his home country. Brown v. Atwood Oceanics, Inc., 676 F.Supp. 720 (M.D.La.1988). Camejo, supra, also strongly implies that the burden is on the plaintiff:
Because Plaintiff has not shown that no remedy was available to her so as to fit this case within one of the exceptions *575 to the Jones Act exclusion provision, she has failed to state a claim for relief under the Jones Act, and that portion of the case must be dismissed.
Id., p. 1377, FN. 6.
While Centofanti v. Diamond Offshore Drilling, Inc., 01-1691 (La.App. 1 Cir. 5/22/02), 819 So.2d 1101, implies that the plaintiff's claims should be dismissed unless he comes under the 46 U.S.C.App. § 688(b)(A) and (B) exception, it also implies that the burden is on the defendant to show not only that the plaintiff is a foreign national injured in foreign waters, but the defendant must bear the additional burden of proving that the plaintiff has either a remedy in his home country or in the country having jurisdiction over the situs of the incident.
In Centofanti the plaintiff, an Australian citizen, was allegedly injured in the South China Sea off the coast of Malaysia. He filed a Jones Act claim and an unseaworthiness claim under the general maritime law, which were met by the defendant's exception of no right of action and an alternative motion for summary judgment, both of which were based on the 46 U.S.C.App. § 688(b). The Centofanti court found that:
It is undisputed that Centofanti submitted a claim for benefits under Western Australia's Compensation law, that Diamond Offshore Drilling initially disputed its liability under that legislation, and that Centofanti has received some payments pursuant to that legislation. Absent from the record is evidence of the finality of Centofanti's award of benefits. Therefore, Diamond Offshore Drilling failed to make a prima facie showing that Centofanti has a remedy in Australia, and the trial court erred in granting summary judgment in its favor. [Emphasis added.]
Id., 01-1691 (La.App. 1 Cir. 5/22/02), 819 So.2d 1101.
In deciding the plaintiff's exception of no right of action, the Centofanti court noted that based on the same evidence as was before the trial court in connection with the motion for summary judgment, the defendant "failed to definitively show that Centofanti has a remedy under the laws of either Australia or Malaysia." In other words, the Centofanti court effectively held that the defendant has not only the burden of showing that the plaintiff falls under the provisions of 46 U.S.C.App. § 688(b) by being a foreign national injured in foreign waters, but then the defendant also has the burden of showing that the plaintiff is not entitled to claim the benefit of the exception found in 46 U.S.C.App. § 688(b)(2)(A) and (B), i.e., the defendant has the affirmative burden of showing that the plaintiff has a remedy either in the courts where he sustained injury or in the courts of his home country. We disagree with the implicit conclusion reached by the Centofanti court.
The issue of who bears the burden of proof under 46 U.S.C.App. § 688(b)(2) is a question of law which depends on the interpretation of the statute. Our reading of 46 U.S.C.App. § 688(b) is at variance with that of our learned brethren of the First Circuit. 46 U.S.C.App. § 688(b)(2) provides in pertinent part that: "The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action[5] establishes that no remedy was available to that person  ." The Centofanti decision does not address the significance of this highlighted language. The language highlighted clearly places the burden on "the person bringing *576 the action" to establish his entitlement to the exception to the statute. This is consistent with the reasoning expressed in Camejo and Brown, supra. Moreover, even in the absence of this clear language, the burden would still be on the plaintiff in conformity with the general precept of statutory construction that the burden is on the person claiming an exception to establish entitlement thereto. Exceptions are to be strictly construed. Times Picayune Pub. Corp. v. City of New Orleans, (on rehearing), 99-1685, p. 1 (La.App. 4 Cir. 2/23/00), 760 So.2d 375, 386. Therefore, as the plaintiff does not contest the fact that he is a citizen of India alleging the occurrence of an injury in the waters of the United Arab Emirates, the burden is on him to show that he has no remedy under the laws of either of those jurisdictions.
Next we must determine whether the plaintiff succeeded in discharging his burden of showing that he lacked a remedy in both India and the United Arab Emirates.
In his attempt to show that he had no remedy in either jurisdiction the plaintiff offered affidavits of legal experts which he contends support his position.
Plaintiff offered the affidavit of Hitesh Jain as a legal expert on the law of India. On this appeal the appellees challenge neither Mr. Jain's expertise nor his competency to express the opinion contained in his affidavit. Mr. Jain's affidavit states unequivocally that the plaintiff has no remedy under the law of India. The appellees offer no countervailing affidavit or other evidence to contradict Mr. Jain's affidavit. Instead, the appellees cite the case of Hill v. McDermott, 827 F.2d 1040 (5th Cir.1987), stating in their brief that, "the Court found [in Hill] that on the record before it the law of India provided a remedy." But the facts of Hill are inapposite because in that case the plaintiff was a citizen of Honduras, not India, and he was injured off the coast of India, not off the coast of the United Arab Emirates. The affidavit of Mr. Jain makes it clear that the fact that the plaintiff in the instant case was not injured in Indian waters is a significant factor in reaching his conclusion that the courts of India would refuse to provide Mr. Soares with a remedy. Additionally, while the Hill court noted in dicta that there was some evidence in the record that there was an available remedy in India, it refrained from deciding the issue. The Hill court also noted that the judgment of the trial court, which judgment the Hill court affirmed, "dismissed any claims brought under the laws of India provided that McDermott would submit to the jurisdiction of an Indian court." This remedy is very similar to that ordered by this Court in Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691 (La.App. 4 Cir.1992), wherein this Court remanded to the trial court with an order staying the proceedings contingent upon the plaintiff actually being given the opportunity to pursue a remedy in his home country. It is also analogous to the remedy contained in the lower court judgment which was affirmed by the Supreme Court in Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158.
Accordingly, we find that the Hill case does not support the appellees' argument that the plaintiff can obtain a remedy from the courts of India. As there is no evidence in the record to contradict the affidavit of Mr. Jain on this point, based on the record before us at this stage of the proceedings, we find that the plaintiff has successfully proved that he has no remedy in an Indian court.
In support of his contention that he also has no legal remedy in the United Arab Emirates, the plaintiff offers the affidavit of Peter Guy Michelmore, Managing Partner of Al Sayegh Legal Consultants, the *577 Abu Dhabi office of Richards Butler, an international law firm with headquarters in London. Tidewater challenges neither the expertise of Mr. Michelmore nor his competency to express the opinion contained in his affidavit. Tidewater bases its contention that the Michelmore affidavit is insufficient to discharge the plaintiff's burden of proof on the assertion that even if this Court were to adopt the Michelmore affidavit in its entirety, it is too equivocal to constitute proof sufficient to meet the expectations of § 688(b)(2)(A) in proving that the plaintiff has no United Arab Emirates remedy. Following are the significant portions of Mr. Michelmore's affidavit with equivocal and uncertain language shown in boldface. The italicized portions were italicized in the original:
9. [I]t is extremely difficult to give definitive legal advice on the way in which courts [in the United Arab Emirates] are interpreting and applying legislation and my affidavit must be read accordingly....
* * *
10. I note that the employment contract between Mr. Soares and Al Wasl Marine Ltd. attached to the affidavit of Mr. Charles E. Stricklin is in English only and not Arabic. I also note from the affidavit of Joann O'Sham that, "no UAE labour card or UAE employment visa was issued to him [Mr. Soares]."

11. Labour Laws in the UAE are governed by Federal Law No. 8 of 1980 (as amended in 1986), (the `Labour Law'). This states at Article 2 that, "the Arabic language is the language to be used in all records, notices and the like."

12. Article 13(1) of the Labour Law goes on to state that, "it is not permissible to employ non-nationals for the purpose of work in the UAE except with the agreement of the employment department and after obtaining a work permit in accordance with the procedures and regulations stipulated by the Ministry of Labour and Social Affairs.

* * *
14. The Labour Laws do set out a compensation scheme relating to the injury of workers during their employment. This would be applicable to Mr. Soares either under his employment contract with Al Wasl Marine Ltd. or an implied maritime contract with Tidewater Marine International Inc in accordance with Article 169(2) previously mentioned.
* * *
15. To the extent, though, that Mr. Soares did not have a labour card showing his true employer then he would be seen as illegally working. One of my Arabic speaking colleagues has checked the position with the Labour Department here in Abu Dhabi and the department has confirmed that no claim may be brought under the Labour Laws and arguably, therefore, before the Court, against an employer under an unregistered employment contract. If this is so then Mr. Soares would not be afforded the protection and compensation set out in the Labour Laws applicable to injured employees.
21. .... It is unclear what relationship there was between Tidewater Marine International Inc. and Mr. Soares. It is therefore questionable whether there is an obligation instigated or effected in the State between them. The only grounds for accepting jurisdiction really *578 then would seem to be to argue that the events took place in the UAE. This would be a matter for the Courts to decide on the facts.
22. Regardless of whether or not the Court accepts jurisdiction for the alleged `harmful act', I note from the affidavit of Mr. Mohammed Rashid Mohammed Jabr Al Suwaidi that, "under UAE Law any damage resulting out of contract is not actionable in tort. The action must be brought on contract. See Cassation No. 334-1995, session of April 13, 1996." I would like to amplify this. I have not reviewed the particular case that he has quoted because of the difficulties I referred to above about precedent and obtaining judgments. There have been a number of other cases on this particular issue though, to my knowledge, including the Abu Dhabi Supreme Court Appeal No. 368 of the 21st year. Here it was held that courts are likely[[6]] to dismiss a claim in tort where a contractual relationship existed between the parties. In the case in question an employment relationship existed. Therefore, Mr. Soares['] ability to bring a claim for a `harmful act' may be prejudiced by his employment contract.
23. [T]he ability of Mr. Soares to bring a claim in the UAE is not clear cut. The position in respect of who his employer was is unclear and it seems that in any event he did not have a labour card. As such the labour Department and ultimately the Court may refuse to entertain a claim arising out of the same for compensation under the Labour law. The position in respect of a claim for damages arising out of a harmful act (tort) is equally unclear as Mr. Soares could be barred from bringing a claim in tort if it could be proved that he had a contractual relationship with the person causing him harm. The question of whether or not this could be invoked in respect of an illegal contract is a question that only a court could decide. I am not aware of any cases that have dealt with this issue. [Emphasis added.]
The plaintiff also offered the affidavit of Gerard Mendonca, who averred among other things that: (1) he was employed by Al Wasl Marine, L.L.C. as Accounting Manager from September 23, 1995, through August 22, 1999; (2) Tidewater Marine International, Tidewater Crewing Limited and Al Wasl Marine were directly or indirectly wholly-owned subsidiaries of Tidewater, Inc.; (3) that the plaintiff was an employee of Tidewater Inc. and/or Tidewater Crewing Limited and paid wages by Tidewater Crewing Limited; (4) that "Mr. Soares was witnessed injured [sic] having had his slip and fall upon oil and grease, while in service of the vessel. That David Ludlow, Operations Manager informed the affiant that though Mr. Soares had requested (through Pracaxa Saunto) for [sic] being taken to a Doctor or Hospital immediately, he regarded a slip and fall [as] routine and not an emergency to be attended to on a non-work day, could be addressed with first-aid in the office (if no medic available on board the vessel) with further action if necessary to be taken on the first work day"; (5) that Mr. Hassan Mansour, Public Relations Officer of the affiant's department in Wasl Marine was responsible for filing such contracts with UAE Labor Department for Al Wasl employees but was not done for Mr. *579 Soares; and (6) that the affiant was advised by the said Labor Department that it would not accept any written complaint from Tidewater or Mr. Soares because in the absence of a Labor Department work approval, the U.A.E. Labor Law and other U.A.E. Laws would not be applicable to Mr. Soares' case. This was advised to Charles Stricklin of Al Wasl Marine / Tidewater Inc. in Dubai, U.A.E. and Mary Torrens of Tidewater Inc.'s Legal Department in New Orleans, Louisiana.
We find Mr. Mendonca's affidavit to be lacking in persuasive authority. He makes no pretense of having any legal expertise and his conclusion that the plaintiff has no remedy in the United Arab Emirates is based largely on hearsay.
On the other hand, the defendants offered the countervailing affidavit of their own legal expert, Mr. Mohammed Rashid Mohammed Jabr Al-Suwaidi, which we find expresses with much greater certainty the opposing conclusion that the plaintiff does, indeed, have a remedy under the laws of the United Arab Emirates. Mr. Al-Suwaidi's affidavit concludes that:
18. It is submitted that, under the circumstances of the case, the United Arab Emirates Courts, will probably assume jurisdiction if the action is brought on breach of contract, in which case it will apply the law of the country where the contract was concluded, and any compensation will depend on that law.
19. It is also submitted that, under the circumstances of the case, the United Arab Emirates Courts will probably assume jurisdiction if the action is brought in tort.
20. It is my opinion that United Arab Emirates law provides a remedy for Mr. Soares under the circumstances of the case.
This brings us to the next question: How much proof does the plaintiff have to produce in order to meet the requirement of 46 U.S.C.App. § 688(b)(2) that the plaintiff "establishes that no remedy was available ..."? We feel that it is unreasonable to expect a plaintiff to prove to the point of absolute certainty that no remedy is available under either 46 U.S.C.App. § 688(b)(2)(A) or (B). It seems more reasonable to expect the plaintiff to meet either a "clear and convincing" standard or a "preponderance of the evidence/more likely than not" standard. There is no statutory language or jurisprudence to aid this Court in choosing between these two standards and we recognize that legitimate arguments can be made in favor of either standard of proof.
In view of the fact that this Court has previously determined in Coto and Bolan that it was Congress' intention to clear the courts of this country of certain cases where the plaintiff was a foreign national and the incident complained of occurred in foreign waters, it seems that the adoption of the "clear and convincing" standard would be fairer and more reasonable than a "beyond all doubt/absolute certainty" while at the same time being more likely to achieve the purpose behind the enactment of 46 U.S.C.App. § 688(b) than would a "preponderance of the evidence/more likely than not" standard.
However, we note the sweeping language of the Supreme Court in Talbot v. Talbot, 03-0814, pp. 9-10 (La.12/12/03), 864 So.2d 590, 598, favoring the "preponderance of the evidence" standard generally:
In civil cases, a party who has the burden of proof must prove the fact in issue by a preponderance of the evidence, and not by some artificially created greater standard. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993); Jordan v. Travelers Ins. Co., 257 La. 995, 245 *580 So.2d 151, 155 (1971); McCormick on Evidence § 339, at 421 (5th ed.1999). Only in exceptional controversies is the clear and convincing standard applied in civil cases "where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy." McCormick, supra, at 421; Succession of Lyons, 452 So.2d at 1165. The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence. McCormick, supra, at 421; Succession of Lyons, 452 So.2d at 1165. [Emphasis added.]
Thus, while Talbot (a community property case) makes a sweeping statement favoring the preponderance of the evidence standard generally, it also acknowledges, in the language quoted in boldface above, the legitimacy of the clear and convincing standard "where the court considers that the particular type of claim should be disfavored on policy." As already noted just prior to the discussion of Talbot, one reasonable view of § 688(b) is that Congress, as a matter of policy, chose to disfavor certain claims brought by certain foreign nationals occurring in foreign waters and therefore such claimants should bear a clear and convincing burden of proof in seeking to avail themselves of the exception found in § 688(b)(2).
However, based on the record before us it is not essential to the decision in this case that we resolve the difficult question of whether the burden on the plaintiff should be "clear and convincing" or merely "more likely than not." In view of the inconclusive and unpersuasive nature of the plaintiff's affidavits as opposed by the strength of the defendant's countervailing affidavit, we find that the plaintiff failed to carry his burden of proving that he does not have a remedy in the United Arab Emirates, where the accident allegedly occurred, regardless of whether the standard of proof is "clear and convincing" or whether it is merely "preponderance of the evidence/more likely than not."
This finding by this court is supported by the fact that implicit in the judgment of the trial court is a finding that the plaintiff's experts failed to establish that the plaintiff lacked a remedy in the courts of both the United Arab Emirates. None of the parties contest the propriety of receiving expert testimony as to what the law of a foreign country is. See Lafleur v. Sylvester, 135 So.2d 91 (La.App. 3 Cir.1961). The evidence of an expert witness is to be weighed by the trial court in the same manner as any other evidence. Major v. Major, 94-1885, p. 5 (La.App. 4 Cir. 4/3/96), 671 So.2d 571, 576. The court is not bound by the testimony of one expert or the other, and may accept or reject the expert testimony altogether. Id. What this means is that the trial court's implicit weighing of the expert testimony before it should not be rejected by this court in the absence of manifest error, and we find no such manifest error.
For the foregoing reasons, we affirm the dismissal of the plaintiff's claims against the appellees.
AFFIRMED.
JONES, J., concurs in the result.
NOTES
[1] There were no written reasons for judgment. While the judgment of the trial court states it is granting the defendants "Exceptions of No Right/No Cause of Action" it seems obvious that what is really at issue is the exception of no right of action. Moreover, both the appellant and the appellees base their arguments on certain evidence in the record which could only be considered in connection with the exception of no right of action as no evidence may be considered in connection with the exception of no cause of action. La. C.C.P. art. 931. This Court has twice before affirmed the use of the exception of no right of action in similar cases. Coto v. J. Ray McDermott, S.A., 96-2701, 96-2702 (La.App. 4 Cir. 3/18/98), 709 So.2d 1023; Bolan v. Tidewater, Inc., 97-2020 (La.App. 4 Cir. 3/25/98), 709 So.2d 1059.
[2] (b) Limitations for Certain Aliens: Applicability in Lieu of Other Remedy.

(1) No action may be maintained under subsection (a) of this section or any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who is not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred 
(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of offshore mineral energy resources  included but not limited to drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or transporting supplies, equipment or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces; and,
(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions. As used in this paragraph, the term `continental shelf' has the meaning stated in Article 1 of the 1958 Convention on the Continental Shelf.
(2) the provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person [Emphasis added.]
(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or
(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.
[3] Actually, the Third Circuit meant to say that the plaintiff must satisfy both (b)(2)(A) and (B), i.e., he must show that he has no remedy in the courts of his home country and no remedy in the country having jurisdiction over the area in which the accident occurred.
[4] Not to be confused with the state court case bearing the same name, supra.
[5] Emphasis added.
[6] This is the equivalent to "more likely than not."