Opinion issued November 15, 2018



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00339-CV

————————————

**ANDRE NAZARETH, Appellant**

**V.**

**MCDERMOTT INTERNATIONAL, INC. AND MCDERMOTT INTERNATIONAL VESSELS, INC., Appellees**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-40117**

---

# O P I N I O N

In this appeal from a summary judgment dismissing claims brought under the Jones Act and general maritime law, the issue is whether the injured foreign seaman, Andre Nazareth, met his burden to prove that no remedy is available to him under either the laws of the country asserting jurisdiction over the area in

which the incident occurred (Qatar) or the laws of the country in which Nazareth maintains citizenship or residency (India). 46 U.S.C. § 30105(c). Although Nazareth presented evidence that Qatari and Indian courts would not exercise jurisdiction over his case, he presented no evidence that he cannot pursue a Qatar or India law claim in Texas state court, and he even asserted an India law claim in his live pleading. Because Nazareth failed to meet his burden, we affirm.

## Background

Nazareth is a citizen and resident of India. Nazareth used to work as a saturation diver for J Ray McDermott, S.A., a company that provides services to entities in the offshore oil and gas industry. In June 2013, Nazareth was injured while working aboard a vessel owned by two related McDermott entities, McDermott International Vessels, Inc. and McDermott International, Inc., both of which are headquartered in Houston, Texas. At the time of Nazareth's injury, the vessel was over the continental shelf of Qatar, en route from the United Arab Emirates to Saudi Arabia.

Nearly three years after the incident, Nazareth filed suit in Texas state court. He asserted claims against four McDermott entities: (1) McDermott, Inc., (2) J Ray McDermott, S.A., (3) McDermott International, Inc., and (4) McDermott International Vessels, Inc. He later amended his petition to assert claims against only McDermott International and McDermott International Vessels (hereinafter

collectively "McDermott"). As amended, Nazareth's petition asserted four claims: (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) negligence under India law, and (4) negligence under *lex maritima*.

McDermott moved for partial summary judgment, arguing that Nazareth's claims under the Jones Act and general maritime law were barred by the Jones Act's foreign seamen exclusion. *See* 46 U.S.C. § 30105(b). Nazareth responded that the claims were allowed under the exception to the exclusion. *See id.* § 30105(c). The trial court granted McDermott's motion and signed an order dismissing Nazareth's Jones Act and general maritime law claims. McDermott filed a second summary-judgment motion on Nazareth's remaining claims, which the trial court granted as well.

Nazareth now appeals the trial court's first summary-judgment order dismissing his claims under the Jones Act and general maritime law. He does not appeal the trial court's second summary-judgment order dismissing his claims for negligence under India law and *lex maritima*.

## Summary Judgment

In his sole issue, Nazareth contends that the trial court erred in dismissing his claims under the Jones Act and general maritime law.

## A. Standard of review

We review de novo the trial court's ruling on a summary-judgment motion. *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2015, no pet.). To prevail on a traditional summary-judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *Id.* at 643.

## B. Applicable law

Under general maritime law, a seaman injured aboard a vessel may assert a claim for unseaworthiness against the vessel owner. *See Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 657 (Tex. App.—Houston [1st Dist.] 1998, no pet.). And under Section 30104 of the Jones Act, a seaman injured in the course of his employment may assert a claim for negligence against his employer. 46 U.S.C. § 30104.

Section 30105, however, excludes certain foreign seamen from asserting claims under either general maritime law or the Jones Act. 46 U.S.C. § 30105. Section 30105(b) sets forth the exclusion. 46 U.S.C. § 30105(b). It provides that a civil lawsuit for personal injury damages may not be brought under federal maritime law if three conditions are satisfied:

> (1) the individual suffering the injury or death was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action;

(2) the incident occurred in the territorial waters or waters overlaying the continental shelf of a country other than the United States; and

(3) the individual suffering the injury or death was employed at the time of the incident by a person engaged in the exploration, development, or production of offshore mineral or energy resources, including drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or transporting supplies, equipment, or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces.

*Id.*

Section 30105(c) creates two exceptions to the exclusion. *Id.* § 30105(c). Under Section 30105(c), a seaman who meets the conditions of Section 30105(b) may nevertheless bring a civil action under federal maritime law if he "establishes that a remedy is not available under the laws of" either:

(1) the country asserting jurisdiction over the area in which the incident occurred; or

(2) the country in which the individual suffering the injury or death maintained citizenship or residency at the time of the incident.

*Id.*

Under Section 30105(b), the employer has the initial burden to show that the seaman's claims are excluded. If the employer meets its initial burden, the burden shifts to the seaman to show that Section 30105(c)'s exception to the exclusion applies. *Id.* (exclusion does not apply "if the individual bringing the action establishes" exception).

5

## C.   Analysis

It is undisputed that McDermott presented evidence establishing all three elements of Section 30105(b). *Id.* § 30105(b). At the time of his injury, Nazareth was a citizen and resident of India. *Id.* § 30105(b)(1). His injury occurred over the continental shelf of Qatar. *Id.* § 30105(b)(2). And his employer at the time was engaged in offshore oil and gas exploration, development, or production.[1] *Id.* § 3015(b)(3). Therefore, the burden shifted to Nazareth to prove that Section 30105(c) applied. *Id.* § 30105(c). That is, the burden shifted to Nazareth to establish that a remedy was not available to him under the laws of either Qatar or India. *Id.*

To meet his burden, Nazareth presented the declarations of Hani al Naddaf and Kumar Abhishek, lawyers licensed to practice law in Qatar and India, respectively. In his declaration, al Naddaf did not expressly state whether Qatar law provides a cause of action to a seaman injured by an employer's and vessel owner's negligence. He did, however, state that "recourse to the Qatari courts is not an option available to [Nazareth] because the courts will not accept jurisdiction of his case." Al Naddaf explained that "a Qatari civil court would decline jurisdiction" when, as here, "neither the plaintiff, the defendant, nor the vessel are

---

[1]   The parties appear to dispute which McDermott entity was Nazareth's employer at the time of his injury. The issue is irrelevant for purposes of this appeal because each entity was engaged in oil and gas exploration, development, or production at the time of the injury.

Qatari." In his declaration, Abhishek expressly stated that "Indian law recognizes a seafarer's right to raise a claim in tort against a defendant shipowner." But like al Naddaf, Abhishek further stated that Indian courts would decline to exercise jurisdiction over Nazareth's suit because the injury did not occur in India and McDermott does not reside or do business in India.

McDermott did not present evidence to rebut either declaration. Thus, it is undisputed that neither the courts of Qatar nor the courts of India would exercise jurisdiction over Nazareth's suit against McDermott.

Nazareth argues that, by proving that Qatari and Indian courts would decline to exercise jurisdiction over his suit, he has established that a remedy is not available to him under the laws of Qatar or India. According to Nazareth, the "laws" of a country consist of both the substantive law and the procedural law, the latter of which includes jurisdictional law. Thus, whether a remedy is "available" to a seaman under the laws of a country depends, in part, on whether the country's courts have jurisdiction over the seaman's suit. If the country's substantive law provides a cause of action to injured seamen, but the country's courts do not have jurisdiction over the seaman's suit, then a remedy is not available under the laws of that country. Thus, Nazareth concludes, by presenting uncontroverted evidence that the courts of Qatar and India would not exercise jurisdiction over his suit, he

7

met his burden to establish that a remedy is not available to him under the laws of those two countries.

McDermott responds that Nazareth's understanding of Section 30105(c) is fundamentally incorrect. According to McDermott, Section 30105(c)'s application does not depend on whether the courts of the specified countries will exercise jurisdiction over the seaman's suit. Section 30105(c) is not jurisdictional; rather, it is a choice-of-law provision. If a remedy is not available under the laws of either country, then U.S. maritime law applies. But if a remedy is available, then the law of the relevant country applies. McDermott argues that Nazareth has failed to meet his burden because he presented no evidence that he cannot assert a Qatar or India law claim in Texas state court. To the contrary, Nazareth asserted an India law claim in his amended petition, thereby indicating that a remedy is available to him under the laws of India. We agree with McDermott.

The controlling authority is the Texas Supreme Court's opinion, *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex. 1999). In *Stier*, a German citizen and resident of Brazil was injured while working on a vessel berthed in Trinidad. *Id.* at 424. He sued his employer, asserting claims under the Jones Act, general maritime law, Texas law, and Trinidad law. *Id.* The employer filed a motion for summary judgment, which the trial court granted, holding that the predecessor of Section 30105 preempted all four claims. *Id.* at 425. On appeal, the employee

8

conceded that he had a remedy under the laws of Trinidad and that the statute therefore preempted him from pursuing his claims under federal maritime law. *Id.* at 425, 428. The issue was whether the statute preempted him from pursuing claims under Texas law and Trinidad law as well. *Id.* at 428. The Supreme Court held that the statute preempted the employee's Texas law claim but not his Trinidad law claim. *Id.* at 425. In reaching its holding, the Court explained that the statute is best understood as a "choice-of-law provision." *Id.* at 434. Because a remedy was available under the laws of Trinidad, the employee could not assert a claim under federal maritime law or state law, but he could assert a claim under Trinidad law. *Id.* at 431.

Thus, under *Stier*, Section 30105(c) operates as a choice-of-law provision that determines the type of claim a foreign seaman can assert in state court. If no remedy "exists" under the laws of either specified country, then the seaman can assert a claim against a U.S. defendant under U.S. maritime law. *Id.* at 427. But if such a remedy does exist, the seaman can only assert a claim in U.S. courts under the laws of that country. *Id.* at 427, 431. Whether the foreign country's courts would have jurisdiction over the case is irrelevant.

We recognize that courts in other jurisdictions have construed the statute differently and have adopted a construction similar to that advanced by Nazareth.[2] *See, e.g.*, *Jackson v. N. Bank Towing Corp.*, 201 F.3d 415, 418 n.1 (5th Cir. 2000) (per curiam) (quoting legislative history indicating that congress intended statute to require foreign seamen to pursue remedy "in their own country"), *opinion vacated and superseded on reh'g*, 213 F.3d 885 (5th Cir. 2000) (per curiam); *Soares v. Tidewater, Inc.*, 895 So. 2d 568, 574 (La. Ct. App. 2005) (disagreeing with *Stier*). Nevertheless, the Texas Supreme Court in *Stier* concluded otherwise and is the controlling authority in this case for our court.

---

[2]     We further note that the Fifth Circuit has had at least one opportunity to address the issue but declined to do so. In *Johnson v. PPI Technology Services, L.P.*, the trial court "treated the issue of foreign remedy availability as, essentially, an inquiry into whether either of the foreign countries has remedial law on the books governing the circumstances of the incident." 613 Fed. App'x 309, 311 (5th Cir. 2015) (per curiam). On appeal, the plaintiff argued that the trial court's "understanding of the § 30105(c) inquiry was too narrow" and that the trial court should not have considered only whether the specified countries had applicable remedial laws "but also whether such remedies were actually 'available' (the statute's term) to him or were rather outside his reach for extraneous reasons." *Id.* The Fifth Circuit did not decide whether the plaintiff was right, stating: "We need not, and do not, decide whether we agree with [the plaintiff]'s interpretation of § 30105(c)—*viz.,* that remedies are not 'available' under a foreign country's laws if that country's courts cannot assert jurisdiction over the named defendants—because, irrespective of whether we adopt [the plaintiff]'s interpretation of the statute, we are compelled, for the reasons that follow, to conclude that he has failed to satisfy his burden . . . ." *Id.*

We hold that Nazareth failed to meet his burden to establish that a remedy is not available to him under the laws of Qatar or India. Therefore, we overrule his sole issue.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

11